PEOPLE v SCOTT

1. Criminal Law—Motions—Directed Verdicts—Evidence—Elements of Crime.

A directed verdict is appropriate where the evidence introduced at the time the motion is made, viewed in the light most favorable to the prosecution, is insufficient to justify a reasonable man in concluding that all of the elements of the crime are established beyond a reasonable doubt.

2. Criminal Law—Larceny by Conversion—Elements.

The material elements of larceny by conversion are (1) the property must have some value, (2) the property of another must be delivered over to the defendant by legal or illegal means, (3) the defendant must have embezzled the property or money; converted the property or money to his own use; or hidden the property or money with the intent to embezzle or fraudulently use such property or money, (4) at the time of the embezzlement, conversion or hiding the defendant must have intended to defraud or cheat the owner permanently of that property, and (5) the embezzlement, conversion or hiding of the property or money must have been without the consent of the owner.

Appeal from Tuscola, Martin E. Clements, J. Submitted June 17, 1976, at Lansing. (Docket No. 25825.) Decided October 20, 1976.

Earl J. Scott, Jr., was convicted of larceny by conversion. Defendant appeals. Reversed.

*Thomas D. Abbey,* for defendant.

References for Points in Headnotes
[1] 75 Am Jur 2d, Trial § 713.
[2] 50 Am Jur 2d, Larceny § 36.
Taking, and pledging or pawning, another's property as larceny. 82 ALR2d 863.

Before: BRONSON, P. J., and BEASLEY and D. ANDERSON, JR.,* JJ.

BEASLEY, J. The defendant, Earl John Scott, Jr., was convicted by a jury of larceny by conversion (MCLA 750.362; MSA 28.594) and now appeals.[1]

At the time of trial, the defendant and the complaining witness, Erwin Petzel, Jr., had been friends for about ten years and had lived, worked and socialized together on numerous occasions. Sally Petzel, Erwin Petzel's wife, had known the defendant since childhood. The subject matter of the alleged conversion was a 1971 Honda motorcycle owned by Mr. Petzel.

Before the Petzels moved to Florida, the defendant entered into a verbal option agreement with Mr. Petzel in which the parties agreed that the defendant could either purchase the motorcycle for $1,000, in installments of $50 or $60 per month, or, alternatively, that the defendant could sell the motorcycle for a minimum of $1,000 and turn that amount over to Mr. Petzel.

In accordance with this agreement, the defendant took possession of the motorcycle. After making one payment of $60, defendant wrote a letter to the Petzels, who were now in Florida, and informed them that he had decided not to buy the motorcycle, but that he would store it and continue to hold it for sale. The terms of the original agreement remained in effect and, although it appears that Erwin Petzel later decided that he

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] For unexplained reasons the prosecutor has failed to submit a brief on appeal. This silence of the prosecutor seriously impairs the adversary process essential to appellate review under our judicial system and is unfair to the trial judge. *See People v Beamon,* 50 Mich App 395; 213 NW2d 314 (1973).

did not want to sell the motorcycle, the defendant was never informed of this fact.

On August 30, 1974, the defendant sold the motorcycle to one Jack Gierman for $500 and issued Mr. Gierman a signed receipt for that amount. Defendant told Mr. Gierman at the time of the sale that the motorcycle belonged to Mr. Petzel and that the defendant had been storing it for a long time and would soon go to Florida to obtain the title from Mr. Petzel.

On the day after the sale, Mr. Petzel returned to Michigan. On that same day, the defendant spotted Mr. Petzel and invited him to the defendant's house. At the defendant's house, the subject of the motorcycle came up. Mr. Petzel testified that the defendant asked him whether he preferred the motorcycle or the money, and that he, Petzel, stated that he wanted the motorcycle back. Following re-cross examination, the court asked Mr. Petzel if he had seen any money offered to him. Mr. Petzel said no. The court then asked whether the defendant had orally offered Petzel any money and Mr. Petzel said yes, the amount of $500. Mr. Petzel also testified that when he told defendant that he wanted the motorcycle back, the defendant agreed to assist him in recovering it. However, before the defendant could do so, Mr. Petzel contacted Mr. Gierman independently in an attempt to recover the motorcycle.

Fearing that defendant and Mr. Petzel were trying to cheat him, Mr. Gierman immediately contacted the State Police. Mr. Petzel also contacted the State Police at approximately the same time. Subsequently, a warrant was issued and the defendant was arrested for the charged offense.

The foregoing comprised the prosecution's case-in-chief against the defendant. The defendant

claims that the trial court erred in denying his motion for directed verdict at the close of plaintiff's proofs. We agree.

A directed verdict is appropriate when the evidence introduced at the time the motion is made, viewed in the light most favorable to the prosecution, is insufficient to justify a reasonable man in concluding that all of the elements of the crime are established beyond a reasonable doubt. See *People v Royal,* 62 Mich App 756; 233 NW2d 860 (1975). We conclude that under this test all the elements of larceny by conversion were not sufficiently established.

The material elements of larceny by conversion are as follows:

"(3) First, the property must have some value.

"(4) Second, the property of another must be delivered over to the defendant. (It is immaterial whether the property is delivered by legal or illegal means.)

"(5) Third, the defendant must have (embezzled the property/money); (converted the property/money to his own use); or (hidden the property/money with the intent to embezzle or fraudulently use such property/money).

"(6) Fourth, at the time of the (embezzlement) (conversion) (hiding) the defendant must have intended to defraud or cheat the owner permanently of that property.

"(7) Fifth, the (embezzlement) (conversion) (hiding) of the property/money must have been without the consent of the owner." 5 Mich Proposed Cr Jury Instructions 1047 (1975). See also, *People v Franz,* 321 Mich 379; 32 NW2d 533 (1948), *People v Doe,* 264 Mich 475; 250 NW 270 (1933).

We find the prosecution's case-in-chief did not present sufficient evidence under the directed verdict test on either element (5) or element (6). The

testimony of the plaintiff's witnesses, including Mr. Petzel, does not give rise to an inference that the defendant converted the money to his own use or that he intended to defraud or cheat Mr. Petzel permanently of the money or the motorcycle. On the contrary, the defendant's actions would appear to mandate the opposite conclusion. It was the defendant who initially contacted Mr. Petzel and informed him of the sale. Furthermore, it is uncontroverted that the defendant offered $500 to Mr. Petzel at that time. Mr. Petzel refused this offer because "I just wanted the bike back, feeling to myself that it was worth more than $500". The defendant also offered to help Mr. Petzel recover the motorycycle on the next business day. From these undisputed facts, we cannot perceive how it could be inferred that defendant either converted the property or money to his own use or that he intended to defraud or cheat Mr. Petzel permanently of the property or money. The people's proofs only showed that the defendant sold the property at a price lower than that authorized. While such a showing may subject the defendant to civil liability on a breach of contract claim, it does not subject him to criminal liability under the larceny by conversion statute. The statute would apply to the facts of the present case only if the defendant fraudulently intended to convert the proceeds of the sale to his own use rather than merely holding those proceeds, or a like amount, on Mr. Petzel's behalf. As indicated above, the undisputed facts only show the latter to have occurred here.

Reversed. The defendant is ordered discharged.