PEOPLE v McINTOSH

Docket No. 45552. Submitted June 9, 1980, at Grand Rapids.—Decided January 21, 1981.

Robert J. McIntosh was convicted of larceny by conversion over
$100 in the Calhoun Circuit Court, Paul Nicolich, J. Defendant
rented an automobile in Marshall, Michigan, on March 28,
1977, indicating he would need it for three or four days. The
vehicle was found on June 24, 1977, parked behind W. L. Moore
& Sons Trucking and Excavating Company in Detroit. The
odometer showed that over 10,000 miles had been put on the
car since it had been rented. Defendant had worked for W. L.
Moore & Sons for 1-1/2 to 2 months prior to May 23, 1977.
Defendant appeals. *Held:*

1. The prosecutor did not abuse his discretion in charging
defendant with larceny by conversion over $100 rather than
refusal or wilful neglect to return rented property. A prosecutor is bound to charge under a specific statute which fits the
particular facts rather than a more general statute where it
appears that the Legislature intended to carve out an exception
to the general criminal statute and provide a lesser penalty for
a more specific offense. The elements of larceny by conversion
are: 1) the property must have been voluntarily transferred or
delivered over to the custody of the defendant; 2) the property
must have a fair market value exceeding $100; 3) the defendant
must have either hidden or wrongfully deprived another of the
possession of that property; 4) at the time of the act, the
defendant must have intended to defraud the owner permanently of the property; and 5) the act must have been done
without the consent of the owner. The elements of the offense

REFERENCES FOR POINTS IN HEADNOTES
[1, 4] 21 Am Jur 2d, Criminal Law §§ 13, 17.
   73 Am Jur 2d, Statutes § 257.
[2] 18 Am Jur 2d, Conversion § 26.
   50 Am Jur 2d, Larceny § 2.
[3] 50 Am Jur 2d, Larceny §§ 59, 90.
[5] 75 Am Jur 2d, Trial §§ 483, 489.
[6] 30 Am Jur 2d, Evidence § 1125.
[7] 21 Am Jur 2d, Criminal Law § 241 *et seq.*

of refusal or wilful neglect to return rented property are: 1) the property must be delivered on a rental or lease basis under a written agreement providing for its return to a particular place at a particular time; 2) the property must have a fair market value which exceeds $100 (to be a felony); 3) the defendant must have refused or wilfully neglected to return the property after the expiration of the time stated in a notice in writing proved to have been duly mailed by registered or certified mail addressed to his last known address; and 4) at the time of the refusal or wilful neglect the defendant must have intended to defraud the lessor. The prosecutor did not abuse his discretion in charging a defendant with larceny by conversion rather than refusal or wilful neglect to return rented property where he concluded that intent to defraud the owner permanently of the rented property was evident.

2. A court, when ruling on a motion for a directed verdict of acquittal, must consider the evidence which had been presented by the prosecution up to the time the motion is made, view that evidence in the light most favorable to the prosecution, and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. It is not necessary for the prosecution to specifically disprove all innocent theories even where the evidence is largely circumstantial; the better approach is to leave it to the jury to determine whether reasonable theories of innocence have been negated. There was sufficient evidence presented for the trial court to deny defendant's motion for a directed verdict.

3. Defendant claimed that a 15-month delay between his initial sentencing date and sentencing denied him a fair trial. Four factors are considered in determining whether a defendant's right to a speedy trial has been violated: 1) the length of the delay; 2) the reason for the delay; 3) the defendant's assertion of his right; and 4) prejudice to the defendant. Upon balance, defendant was not denied his right.

Affirmed.

1. Statutes — Judicial Construction — Criminal Law.

A statute specific in language and enacted subsequent to a general statute covering the same subject matter constitutes an exception to the general statute if there appears to be a conflict between the two; a prosecutor is bound to charge under a specific statute which fits the particular facts rather than a more general statute where it appears that the Legislature

intended to carve out an exception to the general criminal statute and provide a lesser penalty for a more specific offense.

2. LARCENY — LARCENY BY CONVERSION — STATUTES.

The elements of larceny by conversion are: 1) the property must have been voluntarily transferred or delivered over to the custody of the defendant; 2) the property must have a fair market value exceeding $100; 3) the defendant must have either hidden or wrongfully deprived another of the possession of that property; 4) at the time of the act, the defendant must have intended to defraud the owner permanently of the property; and 5) the act must have been done without the consent of the owner (MCL 750.362; MSA 28.594).

3. LARCENY — REFUSAL TO RETURN RENTED PROPERTY — STATUTES.

The elements of the offense of refusal or wilful neglect to return rented property are: 1) the property must be delivered on a rental or lease basis under a written agreement providing for its return to a particular place at a particular time; 2) the property must have a fair market value which exceeds $100 (to be a felony); 3) the defendant must have refused or wilfully neglected to return the property after the expiration of the time stated in a notice in writing proved to have been duly mailed by registered or certified mail addressed to his last known address; and 4) at the time of the refusal or wilful neglect the defendant must have intended to defraud the lessor (MCL 750.362a; MSA 28.594[1]).

4. LARCENY — LARCENY BY CONVERSION — REFUSAL TO RETURN RENTED PROPERTY — PROSECUTORIAL DISCRETION.

A prosecutor did not abuse his discretion in charging a defendant with larceny by conversion rather than refusal or wilful neglect to return rented property where he concluded that intent to defraud the owner permanently of the rented property was evident.

5. CRIMINAL LAW — DIRECTED VERDICT — ACQUITTAL.

A court, when ruling on a motion for a directed verdict of acquittal, must consider the evidence which had been presented by the prosecution up to the time the motion is made, view that evidence in the light most favorable to the prosecution, and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.

6. CRIMINAL LAW — CIRCUMSTANTIAL EVIDENCE — THEORIES OF INNO-
CENCE.

  It is not necessary for the prosecution to specifically disprove all
  innocent theories even where the evidence is largely circum-
  stantial; the better approach is to leave it to the jury to
  determine whether reasonable theories of innocence have been
  negated.

7. CRIMINAL LAW — SPEEDY TRIAL.

  Four factors are considered in determining whether a defendant's
  right to a speedy trial has been violated: 1) the length of the
  delay; 2) the reason for the delay; 3) the defendant's assertion
  of his right; and 4) prejudice to the defendant.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *James Norlander,*
Prosecuting Attorney, and *John H. MacFarlane,*
Prosecuting Attorney, for the people.

*Janet Tooley,* Assistant State Appellate De-
fender, for defendant on appeal.

Before: ALLEN, P.J., and D. F. WALSH and G. R.
McDONALD,* JJ.

G. R. McDONALD, J. Defendant, Robert J. Mc-
Intosh, was convicted on November 23, 1977, by a
Calhoun County Circuit Court jury of larceny by
conversion over $100. MCL 750.362; MSA 28.594.
He was sentenced on April 9, 1979, to 20 to 60
months in prison and appeals as of right.

The charges arose from defendant's conversion
of an automobile that he had rented from the
Boshears Ford dealership in Marshall, Michigan.
On March 28, 1977, when defendant obtained the
vehicle, he indicated that he would need it for
three or four days. The automobile was never
returned and a complaint was signed on April 8,
1977. The dealership recovered the vehicle on

---

* Circuit judge, sitting on the Court of Appeals by assignment.

June 24, 1977, in Detroit, where it was parked behind the business property of W. L. Moore & Sons Trucking and Excavating Company. The odometer showed that over 10,000 miles had been put on the car during the time it was out of the dealer's possession. Defendant worked for W. L. Moore for the month and a half to two months immediately preceding May 23, 1977.

Defendant's initial claim on appeal is that the prosecutor abused his discretion in charging defendant with larceny by conversion. Defendant argues that the correct charge should have been one of refusal or wilful neglect to return rented property, MCL 750.362a; MSA 28.594(1), since it is a more specific statute prohibiting the same conduct. It provides:

"Any person to whom a motor vehicle, trailer or other tangible property is delivered on a rental or lease basis under any agreement in writing providing for its return to a particular place at a particular time who refuses or wilfully neglects to return such vehicle, trailer or other tangible property, after the expiration of the time stated in a notice in writing proved to have been duly mailed by registered or certified mail addressed to the last known address of the person who rented or leased the motor vehicle, trailer or other tangible property, and with intent to defraud the lessor, is guilty of larceny. If the vehicle, trailer or other tangible property exceeds the value of $100.00 he shall be guilty of a felony punishable by imprisonment for not more than 2 years or by a fine of not more than $1,000.00, or both. If the vehicle, trailer, or other tangible property is of the value of $100.00 or less, he shall be guilty of a misdemeanor."

The offense of larceny by conversion is defined in MCL 750.362; MSA 28.594:

"Any person to whom any money, goods or other

property, which may be the subject of larceny, shall have been delivered, who shall embezzle or fraudulently convert to his own use, or shall secrete with the intent to embezzle, or fraudulently use such goods, money or other property, or any part thereof, shall be deemed by so doing to have committed the crime of larceny and shall be punished as provided in the first section of this chapter."

Although prosecuting attorneys have broad discretion in determining under which applicable statute a prosecution will be instituted, that discretion is not unlimited. *People v LaRose,* 87 Mich App 298, 302; 274 NW2d 45 (1978), *People v Birmingham,* 13 Mich App 402, 406-407; 164 NW2d 561 (1968). Rules of statutory construction require that a statute specific in language and enacted subsequent to a general statute covering the same subject matter constitutes an exception to the general statute if there appears to be a conflict between the two. Therefore, where it appears that the Legislature intended to carve out an exception to a general criminal statute and to provide a lesser penalty for a more specific offense, a prosecutor is bound to charge under the statute which fits the particular facts and not the more general statute. *People v LaRose, supra,* 303-304.

The circumstances of the present case reveal no prosecutorial abuse. Defendant erroneously assumes that the statute proscribing refusal or wilful neglect to return property is merely a more specific exception to the larceny by conversion statute. A careful reading of the respective sections reveals that the statutory offenses are distinct.

The material elements of larceny by conversion are:

"First, the property in question must have been voluntarily transferred or delivered over to the custody of the defendant."

"Second, the property must have had a fair market value which exceeded, that is, was over, $100."

"Third, the defendant must have either hidden or wrongfully deprived another of the possession of that property. Any distinct act of control exerted over the property in denial of, or inconsistent with, the owner's rights is a wrongful deprivation."

"Fourth, at the time of the act the defendant must have intended to defraud or cheat the owner permanently of the property."

"Fifth, the act must have been done without the consent of the owner." CJI 23:6:01. See also *People v Scott,* 72 Mich App 16, 19; 248 NW2d 693 (1976).

The material elements of the offense of refusal or wilful neglect to return rented property are:

First, the property must be delivered on a rental or lease basis under a written agreement providing for its return to a particular place at a particular time;

Second, the property must have had a fair market value which exceeded $ 100 (for felonies);

Third, the defendant must have refused or wilfully neglected to return the property after the expiration of the time stated in a notice in writing proved to have been duly mailed by registered or certified mail addressed to his last known address; and

Fourth, at the time of the refusal or wilful neglect the defendant must have intended to defraud the lessor.

While the elements of the two offenses are similar, refusal or wilful neglect to return rented property is more than a specific species of larceny by conversion.

The element of intent to permanently deprive

the owner of the property is an essential distinction between the two offenses. Where the above said element is required in the offense of larceny by conversion, it is not required in the refusal or wilful neglect section.

It is apparent that the Legislature sought to deal with those situations where rented property is not returned yet an intent to permanently deprive is not ascertainable from the facts of the case. Thus the Legislature in passing MCL 750.362a; MSA 28.594(1) did not require the element of intent to defraud or cheat the owner permanently of that property. The Legislature merely made the failure to return leased property within the agreed rental period a fraud on the lessor, *i.e.,* the use of rental property for an additional period without having to pay a rental fee but short of an intent to defraud or cheat the owner permanently of that property. The absence of that element justifies the lesser penalty that the statute imposes.

In this case, the prosecutor apparently concluded an intent to defraud or cheat the owner permanently of the vehicle at the time of the voluntary transfer of the property to the defendant was evident. It was therefore within his discretion to prosecute under the larceny by conversion statute. *People v Heber,* 42 Mich App 582, 589; 202 NW2d 571 (1972).

Defendant also appeals from the denial of his motion for a directed verdict. The Supreme Court enunciated the standard for considering a motion for a directed verdict in *People v Hampton,* 407 Mich 354, 368; 285 NW2d 284 (1979):

"In summary, the trial judge when ruling on a motion for a directed verdict of acquittal must consider the evidence presented by the prosecution up to the time the motion is made, *Garcia, supra,* view that evidence

in a light most favorable to the prosecution, *People v Vail,* 393 Mich 460, 463; 227 NW2d 535 (1975), and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt."

Defendant argues that the prosecution failed to produce sufficient evidence to show that defendant converted the automobile and that he intended to permanently deprive the dealership. We disagree.

The trial produced sufficient evidence that defendant converted the property to his own use. There was testimony that he agreed to rent the automobile for three or four days, but never returned it. The vehicle was recovered almost three months later near defendant's place of employment with close to an additional 10,0000 miles on it. The evidence was such that, when viewed in a light most favorable to the prosecution, a rational trier of fact could find beyond a reasonable doubt that defendant had converted the auto to his own use and, in fact, had driven it during the months following the termination of the rental agreement. *People v Hampton, supra.* Even though the evidence was largely circumstantial it was not necessary for the prosecution to specifically disprove all innocent theories. We believe the better approach is to leave it to the jury to determine whether reasonable theories of innocence have been negated. See *People v Walker,* 93 Mich App 189; 285 NW2d 812 (1979).

Sufficient evidence was also produced to indicate that defendant intended to permanently deprive the dealership of the automobile. The vehicle was abandoned in a city many miles away from the owner, allowing an inference of an intent to permanently deprive. The act of abandonment created a considerable risk of permanent loss to the deal-

ership. See Perkins, Criminal Law (2d ed), § 1, p 267. Again, a rational trier of fact could find beyond a reasonable doubt that such an intent existed.

Defendant's final claim on appeal is that the 15-month delay between defendant's initial sentencing date and the actual sentencing deprived the court of jurisdiction to impose sentence.

In determining whether a defendant's right to a speedy trial is violated a four-part balancing test is utilized. The four factors considered are (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. *People v Chism,* 390 Mich 104, 111; 211 NW2d 193 (1973), *Barker v Wingo,* 407 US 514, 530; 92 S Ct 2182; 33 L Ed 2d 101 (1972). An analogy to that test is appropriate here.

The length of the delay is at least in part a triggering mechanism, although the length necessary to provoke further inquiry depends on the particular circumstances of the case. Here, the delay was for 15 months. Absent explanation, this is too long.[1]

The reason for the delay provides some justification. Following defendant's November 23, 1977, conviction he was turned over to Federal authorities. At the time of the initial sentencing date of January 9, 1978, defendant was in custody in St. Louis, Missouri, and on February 21, 1978, he began to serve a three-year sentence for a Federal conviction at the Oxford Federal penitentiary in Oxford, Wisconsin. The prosecutor did not request temporary custody of defendant until April 13,

---

[1] By way of comparison, MCL 771.1; MSA 28.1131 permits a one-year delay to allow a defendant an opportunity to prove his eligibility for probation or other leniency. *Cf. People v Turner,* 92 Mich App 485; 285 NW2d 340 (1979).

1978, and received no response until October 27, 1978, when a prison representative inquired as to whether custody was still desired. The prosecutor responded to that letter on March 26, 1979, and defendant was returned to Calhoun County for sentencing. No explanation is offered for the prosecutor's lack of diligence.

However, defendant also did little to demand a more prompt sentencing. Although he alleges on appeal that he wrote to the lower court on April 17, 1978, the record does not reflect that the letter was ever actually received. No other correspondence took place.[2]

Finally, it is apparent that the delay caused no prejudice to the defendant. Since the delay was subsequent to trial there was no prejudice to his defense and little reason for anxiety or undue concern. Defendant was given full credit for the time he was incarcerated while awaiting sentencing.[3]

Balancing these four factors, we find that, while delay in sentencing was exceedingly long, it was due in part to the need to obtain custody over defendant from Federal officials. Although we are not convinced that the prosecution acted with sufficient diligence in seeking to obtain defendant, it is apparent that defendant took little action to advance sentencing himself and that he was not prejudiced by the delay. We therefore find that the lower court retained jurisdiction to sentence defendant.

Affirmed.

[2] Unlike *People v Turner, supra,* 489, the present situation is not one where the concept of consent to delay is inherently meaningless. Defendant was already incarcerated and therefore there was no automatic "opting for freedom" on his part.

[3] Defendant's motion for correction of sentence was granted by this Court on March 7, 1980.