## PEOPLE v MICIEK

Docket No. 44769. Submitted October 8, 1980, at Detroit.—Decided June 3, 1981.

Michael W. Miciek was convicted of larceny by conversion, St. Clair Circuit Court, Ernest F. Oppliger, J. He appeals, alleging that insufficient evidence was presented to support his conviction, that the bank misused criminal process to collect a civil debt, and that he was improperly charged with larceny by conversion rather than with writing a check without sufficient funds. *Held:*

1. The record reveals that sufficient evidence was presented to support the jury's finding that all the elements of larceny by conversion were proved beyond a reasonable doubt.

2. The record reveals that the criminal prosecution was initiated by the bank in an effort to vindicate the law.

3. The prosecutor did not abuse his discretion in charging defendant.

Affirmed.

1. CONVERSION — STATUTES.

Larceny by conversion is established where property having some value and belonging to one person is delivered to another, which person embezzles, converts, or hides the property with the intent to embezzle or fraudulently use the property without

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 50 Am Jur 2d, Larceny §§ 2, 39.

What constitutes taking and carrying away, with intent to steal or purloin within meaning of Federal Bank Robbery Act (18 USCS § 2113(b)). 46 ALR Fed 841.

[2] 30 Am Jur 2d, Evidence §§ 1170–1172.

[3] 50 Am Jur 2d, Larceny §§ 23, 36.

[4] 1 Am Jur 2d, Abuse of Process § 14.

50 Am Jur 2d, Larceny § 111.

Use of criminal process to collect debt as abuse of process. 27 ALR3d 1202.

[5, 6] 41 Am Jur 2d, Indictments and Information § 226.

63 Am Jur 2d, Prosecuting Attorneys §§ 26, 27.

[7] 73 Am Jur 2d, Statutes § 257.

the consent of the owner and with the intent to defraud or cheat the owner by permanently depriving him of the property (MCL 750.362; MSA 28.594).

2. CRIMINAL LAW — REASONABLE DOUBT — EVIDENCE.

A trial court, in determining whether a conviction was based on sufficient evidence, must consider whether there was sufficient evidence to justify a finding by a rational trier of fact that a defendant was guilty beyond a reasonable doubt.

3. CONVERSION — BANKS — DEPOSITORS — ERRORS IN POSTING — STATUTES.

A voluntary transfer of money by a bank in error into the account of a depositor constitutes the delivery element of larceny by conversion where the depositor subsequently, knowingly exercises dominion and control over the money or uses it against the interest of the bank with the intent to permanently deprive it of the money, and the fact that the bank knew of the error prior to the exercise of control by the depositor and may have been able to avoid any loss by more expedient action does not exculpate the depositor's actions, nor does its failure to act constitute consent to the depositor's actions or an agreement to loan the money to the depositor (MCL 750.362; MSA 28.594).

4. CONVERSION — CRIMINAL PROSECUTIONS — CIVIL ACTIONS — ABUSE OF PROCESS.

Use of criminal courts to vindicate the law in a case involving larceny by conversion, where civil proceedings to recover the converted property are pending at the time of criminal trial, does not constitute a misuse of process.

5. FALSE PRETENSES — INSUFFICIENT FUNDS — PROSECUTORIAL DISCRETION.

Charging a criminal defendant with obtaining money by false pretenses rather than writing a check with knowledge that there are insufficient funds on deposit for payment thereof where the only act constituting a false pretense is the presentation of the check for payment is an abuse of prosecutorial discretion (MCL 750.131; MSA 28.326).

6. PROSECUTING ATTORNEYS — PROSECUTORIAL DISCRETION — CRIMINAL CHARGES.

A prosecuting attorney has broad discretion in determining under which of two possible applicable statutes a prosecution shall be instituted; however, such discretion is not unlimited.

7. STATUTES — GENERAL STATUTES — SPECIFIC STATUTES.

A statute specific in language and enacted subsequent to a general statute covering the same subject matter constitutes an exception to the general statute where the two statutes conflict.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Peter E. Deegan,* Prosecuting Attorney, and *Peter R. George,* Chief Appellate Attorney, for the people.

*Van De Graaf & Van De Graaf, P.C.,* for defendant.

Before: D. C. RILEY, P.J., and N. J. KAUFMAN and MACKENZIE, JJ.

MACKENZIE, J. On January 31, 1979, defendant was convicted by a jury of larceny by conversion contrary to MCL 750.362; MSA 28.594. He was sentenced to probation for five years with one of the conditions requiring restitution of $8,447.31 to complainant, Michigan National Bank of Port Huron. Defendant appeals as of right.

The evidence at trial revealed the following factual scenario. In September, 1976, defendant was a licensed real estate broker and president of American Heritage Realty, Inc., a Michigan corporation. During this time, American Heritage Realty maintained three accounts at the Michigan National Bank in Port Huron from which defendant was the only corporate officer authorized to withdraw funds.

Donald Hunter, the bookkeeper for the corporation, testified that he deposited $1,500 into the corporate escrow account on September 16, 1976. A bank teller erroneously credited the account with $11,500. Although he noticed the mistake, Hunter testified that he did not inform the bank because he thought that the bank would correct it.

He did, however, tell defendant of the $10,000 overage that day.

Hunter testified that on October 8, 1976, he received the corporate bank statement and noticed that the $10,000 overage had not been corrected. Hunter stated that he immediately notified the bank by phone, drafted a letter to the bank informing it of the overage, and had the defendant sign the letter. Hunter did not know, however, if the letter had in fact been sent.

Hunter testified that the next day, at defendant's direction, he wrote a corporate check for $9,950 drawn on Michigan National Bank and payable to Commerical and Savings Bank. Hunter testified that he had been told that defendant was going to use the check to open accounts at the Commerical and Savings Bank. He testified that after several accounts were opened, he made deposits and withdrawals at defendant's direction. Defendant was the only person authorized to withdraw money from the accounts.

James Frye, an officer of Commercial and Savings Bank, testified that on October 9, 1976, the check for $9,950, along with an additional $2,000, was deposited into three corporate accounts, to wit: $8,950 into a savings account, $1,000 into a checking account, and $2,000 into a third account. By October 12, 1976, $8,450 had been withdrawn from the accounts. In November, 1976, an additional $489.28 was withdrawn. Frye verified that only defendant was authorized to withdraw money from the accounts.

Luanne Veroby, an assistant supervisor of bookkeeping at Michigan National Bank, testified that she received a call on Tuesday, October 12, 1976, from a person identifying himself as the bookkeeper for American Heritage Realty. The caller

informed her that there was a $10,000 overage in the corporate account. She testified that she was positive of the date because it followed Columbus Day, a bank holiday. She immediately informed her supervisor.

On October 13, 1976, the check for $9,950 was received by Michigan National Bank, which honored it.

James M. MacTaggart, vice president of marketing and overdrafts for Michigan National Bank, testified that on October 15, 1976, he first learned of the overage and dishonored the check, sending it back to Commercial and Savings Bank. Later, Commercial and Savings Bank notified Michigan National Bank that the 48-hour deadline for dishonoring checks had passed and threatened to sue if the check was not honored. Upon demand, Michigan National Bank honored the check.

MacTaggart testified that he subsequently called defendant and asked him to attend a meeting to discuss how American Heritage Realty intended to pay Michigan National Bank. The meeting, held in late October, was attended by MacTaggart, bank president Frank Gandreoni, Donald Hunter, and defendant. At the meeting, MacTaggart stated that defendant offered to pay the overdraft with a 90-day note. After examining the assets of American Heritage Realty, the bank refused the offer. No other discussions were held, and in late October the bank froze American Heritage Realty's accounts. On December 7, 1976, MacTaggart signed a complaint for larceny by conversion against defendant.

In *People v Scott,* 72 Mich App 16, 19; 248 NW2d 693 (1976), the elements of larceny by conversion were held to be the following:

" '(3) First, the property must have some value.

" '(4) Second, the property of another must be delivered over to the defendant. (It is immaterial whether the property is delivered by legal or illegal means.)

" '(5) Third, the defendant must have (embezzled the property/money; (converted the property/money to his own use); or (hidden the property/money with the intent to embezzle or fraudulently use such property/ money).

" '(6) Fourth, at the time of the (embezzlement) (conversion) (hiding) the defendant must have intended to defraud or cheat the owner permanently of that property.

" '(7) Fifth, the (embezzlement) (conversion) (hiding) of the property/money must have been without the consent of the owner.' 5 Michigan Proposed Criminal Jury Instructions 1047 (1975). See, also, *People v Franz,* 321 Mich 379; 32 NW2d 533 (1948), *People v Doe,* 264 Mich 475; 250 NW 270 (1933)."

In the case at bar, defendant contends that the prosecution has not established sufficient evidence for the jury to conclude that the last four elements of the crime were proven beyond a reasonable doubt. See *People v Hampton,* 407 Mich 354, 368; 285 NW2d 284 (1979).

Defendant initially argues that there was no delivery of the bank's money to defendant. The thrust of the argument is that there was no voluntary transfer of possession to defendant because money in a bank account remains the property of the bank which has actual possession of the money and becomes the depositor's debtor. In support of this argument, defendant cites the Uniform Commercial Code definition of delivery, MCL 440.1201; MSA 19.1201, and *Neely v Rood,* 54 Mich 134; 19 NW 920 (1884).

The facts, however, contradict defendant's version of the events. Michigan National Bank did not continuously have the funds on deposit.

Rather, on October 9, 1976, defendant transferred the funds to several accounts at Commercial and Savings Bank, where they remained until October 12, 1976. On that date, they were deposited into American Heritage Realty, Inc.'s business checking account at Michigan National Bank. However, between the latter date and October 27, 1976, $9,615.27 was withdrawn from the account. Thus, even though resulting from a bank error, there was a voluntary transfer of possession of the funds from Michigan National Bank to defendant. Moreover, due to defendant's actions, the bank did not retain control of the money.

Defendant contends that as Michigan National Bank employees knew about the $10,000 error by October 8 or October 12, 1976, the bank could have refused to accept the check received October 13, 1976, payable to Commercial and Savings Bank. See MCL 440.3409; MSA 19.3409. The testimony of MacTaggart indicated that Michigan National Bank did in fact make a provisional settlement for the check after it failed to give timely notice of dishonor. See MCL 440.4212; MSA 19.4212, MCL 440.4213; MSA 19.4213. Thus, when MacTaggart became aware of the discrepancy on October 16, 1976, the bank was liable for the check to Commercial and Savings Bank and had been threatened with a lawsuit. The fact that the bank may have been able to avoid the loss initially had its employees acted more expediently does not, in our opinion, exculpate defendant's actions. Because the check was finally paid as of October 15, 1976, and American Heritage Realty continued to exercise dominion over the money, there was sufficient evidence of delivery.

The next question is whether there was sufficient evidence at trial that defendant converted

the money to his own use. Defendant argues that the prosecution only succeeded in proving that complainant, Michigan National Bank, delivered money to Commercial and Savings Bank for deposit in certain commercial accounts held by American Heritage Realty, Inc., but defendant contends that the record is devoid of any evidence that defendant personally received or converted any of the funds.

We do not believe that the phrase "converted to his own use" connotes as narrow an interpretation as defendant suggests. The gist of this element is that defendant exercises dominion or control or uses the property against the interest of the actual owner. The fact that defendant herein apparently converted the bank's money to the use of the corporation, of which he was president and an employee, did not prevent the jury from concluding that this element of the offense had been proved. We note that the evidence showed that defendant was informed of the bank error and, instead of immediately correcting it, ordered the bookkeeper to draw a check for almost the entire amount and to have it deposited in separate accounts in another bank and that defendant was the only person authorized to withdraw money from any of the aforementioned accounts. Such conduct on defendant's part leads us to conclude that he actually did the acts complained of or authorized them on behalf of the corporation. See *People v Cheff,* 37 Mich App 1, 10-15; 194 NW2d 401 (1971).

Next, defendant argues that there was insufficient evidence that defendant intended to cheat or defraud the bank of the $10,000. Defendant contends that the bank's error causing the overage and his offer on behalf of the corporation to repay

the bank by signing 90-day notes are inconsistent with the claim of an intent to defraud. We disagree. Hunter testified that he informed defendant of the bank error initially on September 16, 1976, and again on October 8, 1976, prior to defendant's authorization of the withdrawal of $9,615.27 over a period of 15 days. We reiterate that the fact that the bank perhaps could have prevented the loss initially does not affect defendant's culpability. MacTaggart testified that when he first confronted defendant regarding repayment, defendant said nothing and then smiled and said that he was not going to do anything regarding repayment. Defendant finally offered to repay the money by signing 90-day notes, refusing to make monthly payments. When this form of repayment was rejected on the basis of the corporation's assets and liabilities, defendant did not attempt to repay the money by alternate means. In summary, we find that although there was some evidence to support defendant's theory of a loan, there was also sufficient evidence from which the jury could conclude that he intended to deprive the bank permanently of the money. See *People v McIntosh*, 103 Mich App 11; 302 NW2d 321 (1981), *Hampton, supra.*

Defendant argues that because employees of Michigan National Bank had knowledge of the mistake prior to accepting the check drawn on the corporate escrow account, the bank consented to the overdraft. Under the Uniform Commercial Code, MCL 440.4401; MSA 19.4401, "[a]s against its customer, a bank may charge against his account any item which is properly payable from that account even though the charge creates an overdraft". According to the official U.C.C. Comment, payment of an overdraft "carries an implied promise to reimburse the drawee". Thus, a bank

*may* agree to loan its customer funds by covering an overdraft check.

In the case at bar, however, there was sufficient evidence to support the jury's finding that the bank did not agree to loan defendant the money. Certain bank employees were apprised of the error prior to payment, but the check was paid and the deadline to dishonor it had passed before news of the error reached higher bank officers. The bank only agreed to pay the check under threat of a lawsuit from Commercial and Savings Bank. Again, we note that the bank's negligence does not insulate defendant from criminal liability.

The facts similarly belie defendant's assertion that the bank misused process by using the criminal courts to collect a civil debt. Contrary to this contention, the record indicates that civil proceedings to collect the debt from the corporation were pending at the time of trial. We can only conclude that the prosecution was initiated in an effort to vindicate the law. See *People v Moore,* 43 Mich App 693, 697; 204 NW2d 737 (1972).

Finally, defendant contends that the Legislature did not intend the statute proscribing larceny by conversion to apply to persons writing checks with insufficient funds. Defendant argues that such conduct is properly punishable only under the statute making it a crime to write checks without sufficient funds, MCL 750.131; MSA 28.326.

In *People v LaRose,* 87 Mich App 298; 274 NW2d 45 (1978), a panel of this Court held that where defendant's only act constituting a "false pretense" was the presentation of an insufficient funds check, it was an abuse of prosecutorial discretion to charge him with obtaining money by false pretenses rather than writing a check without sufficient funds. The *LaRose* Court noted that:

"Prosecuting attorneys have broad discretion in determining under which of two possible applicable statutes a prosecution shall be instituted. *People v Lombardo,* 301 Mich 451; 3 NW2d 839 (1942), *People v Heber,* 42 Mich App 582; 202 NW2d 571 (1972). Prosecutorial discretion is not, however, unlimited. *People v Birmingham,* 13 Mich App 402, 406-407; 164 NW2d 561 (1968).

"It is necessary to distinguish between cases where the two possible applicable statutes prohibit the same conduct and cases where the statutory crimes are distinct. In *People v Sanford,* 65 Mich App 101; 237 NW2d 201 (1975), *aff'd* 402 Mich 460; 265 NW2d 1 (1978), for example, the defendants argued that the prosecutor had abused his discretion in charging them with assault with intent to rob while unarmed, MCL 750.88; MSA 28.283, instead of with unarmed robbery, MCL 750.530; MSA 28.798. The defendants contended that it was a denial of equal protection to have two statutes with different penalties prohibiting the same conduct. Because the assault charge required an assault, whereas the robbery charge required either an assault or force and violence, the two statutes prohibited different conduct. The prosecutor, therefore, had discretion to charge under either statute. Also see *People v Graves,* 31 Mich App 635; 188 NW2d 187 (1971), where this Court noted that a conviction of larceny in a building, MCL 750.360; MSA 28.592, in contrast to simple larceny, MCL 750.356; MSA 28.588, requires proof of the additional aggravation of stealing from a building. Since the statutes are distinct, the prosecutor had not abused his discretion in charging the greater offense. And in *People v Shaw,* 27 Mich App 325; 183 NW2d 390 (1970), *lv den* 385 Mich 760 (1971), this Court found no error in charging the defendant with forgery, MCL 750.248; MSA 28.445, instead of with the misdemeanor of unauthorized use of a credit card, MCL 750.219a; MSA 28.416(1). While recognizing that general statutes are controlled by specific statutes, the Court emphasized that the specific credit card offense did not necessarily involve the same elements as the more general forgery statute". *Id.,* 302-303.

In *McIntosh, supra,* this Court held that the prose-

cutor did not abuse his discretion in charging defendant with larceny by conversion rather than refusal or wilful neglect to return rented property. The Court reasoned that the element of intent to deprive the owner permanently of his property requisite for the more serious crime differentiates the offenses so that it could not be said that refusal to return rented property is merely a specific species of larceny by conversion.

In the case at bar, the prosecutor was required to prove more than that defendant, with the intent to defraud, presented a check for payment without having sufficient funds. See MCL 750.131; MSA 28.326, *LaRose, supra,* 300-301. In fact, the prosecutor had the burden of proving that valuable property was mistakenly delivered to defendant, that defendant, knowingly and with intent to deprive the owner of the property, converted it to his use, and that the owner did not consent to the conversion. Moreover, defendant's conduct in hiding the error from the bank, transferring the funds to several accounts in another bank, and spending the money amounted to more than writing a check without having sufficient funds in the account. In summary, we find that defendant was properly charged and convicted with larceny by conversion.

Affirmed.