PEOPLE v EDGAR

1. CRIMINAL LAW—EVIDENCE—CIRCUMSTANTIAL EVIDENCE—BURDEN OF PROOF—INNOCENT THEORIES.

The frequently stated rule where the people's case is based on circumstantial evidence is that the prosecution has the burden of proving that there is no innocent theory possible which will, without violation of reason, accord with the facts; however, that rule has proven unworkable in close cases and the better approach is to ask whether the evidence presented is sufficient to permit reasonable men to conclude that guilt has been established beyond a reasonable doubt where the physical possibility of the defendant's theory is not disproven, but the evidence presented makes innocence most unlikely.

2. LARCENY—EVIDENCE—POSSESSION OF STOLEN PROPERTY.

Evidence that a defendant possessed stolen property shortly after the theft of the property may support a finding that the defendant was the person who actually stole the property.

3. CRIMINAL LAW—ACQUITTAL—MOTIONS—DIRECTED VERDICT—EVIDENCE.

An appellate court tests the correctness of the denial of a defendant's motion for a directed verdict of acquittal by taking the evidence presented by the prosecution in the light most favorable to the prosecution and deciding if there was any evidence upon which the trier of fact could predicate a finding of guilt.

Appeal from Delta, Clair J. Hoehn, J. Submitted April 7, 1977, at Grand Rapids. (Docket No. 28806.) Decided May 4, 1977.

REFERENCES FOR POINTS IN HEADNOTES
[1] 30 Am Jur 2d, Evidence §§ 1125, 1126, 1172.
[2] 29 Am Jur 2d, Evidence §§ 289, 290.
   30 Am Jur 2d, Evidence § 1129.
   Stolen money as subject of larceny or robbery. 89 ALR2d 1435.
   What amounts to "exclusive" possession of stolen goods to support inference of burglary or other felonious taking. 51 ALR3d 727.
[3] 5 Am Jur 2d, Appeal and Error §§ 832, 839.

James F. Edgar was convicted of larceny in a building. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Robert Goebel,* Prosecuting Attorney (Prosecuting Attorneys Appellate Unit, *Mark I. Leach,* Assistant Attorney General, of counsel), for the people.

Upper Peninsula Legal Services, Inc. (by *Gary L. Olsen),* for defendant.

Before: D. E. HOLBROOK, JR., P. J., and QUINN and ALLEN, JJ.,

ALLEN, J. A jury found the defendant guilty as charged of larceny in a building. MCLA 750.360; MSA 28.592. The verdict was returned on March 10, 1976. The defendant was later sentenced to a prison term of 1-1/2 to 4 years. This is an appeal as of right.

Defendant argues that the trial judge erred by denying his motion for a directed verdict of acquittal following the close of the prosecution's case. The motion was premised on the following rule.

"The established rule is that where the people's case is based on circumstantial evidence the prosecution has the burden of proving 'that there is no innocent theory possible which will, without violation of reason, accord with the facts'." *People v Davenport,* 39 Mich App 252, 256; 197 NW2d 521 (1972).

*Davenport* quoted the rule from *People v Millard,* 53 Mich 63; 18 NW 562 (1884). It is safe to assume that, with minor variations, the rule has been repeated and applied in hundreds of Michigan cases.

The case against the defendant was based on

circumstantial evidence. Testimony showed that the defendant and his wife had visited Collins' Pre-Built Homes in Escanaba during the week before Labor Day, 1975. Escanaba is approximately 20 miles east of the defendant's home in Wilson, Michigan.

The Collins establishment closed for the Labor Day weekend in the late afternoon of Friday, August 29, and did not reopen until Tuesday, September 2. When the business closed on Friday, a certain modular home had been prepared for shipment and contained a full complement of furniture.

On Monday (Labor Day) September 1, the defendant left home in his truck at approximately 10 a.m. and returned one hour later with a load of furniture. He told a prosecution witness that he had previously purchased the furniture as factory seconds in Green Bay, Wisconsin and had temporarily stored it at his father's home. The defendant's home is approximately 75 miles northeast of Green Bay.

The theft of the furniture was discovered when Collins' Pre-Built Homes opened for business Tuesday, September 2.

On September 18, a local police agency received a tip that the missing furniture would be found at the defendant's home. Investigators went to the home on September 20, and found the furniture. As a result, the defendant was charged with larceny in a building.

All of the evidence set forth above has been taken from the testimony of prosecution witnesses. The defendant moved for a directed verdict at the close of the prosecution's case. After doing some research, the trial judge denied the motion on authority of *People v Fry,* 17 Mich App 229; 169

NW2d 168 (1969), which expressly held that evidence that a defendant possessed stolen property shortly after a theft would support a finding that the defendant was the person who actually stole the property. See also *People v Helcher,* 14 Mich App 386; 165 NW2d 669 (1968), *People v Williams,* 368 Mich 494; 118 NW2d 391 (1962).

When the motion for a directed verdict of acquittal was denied, the defense rested without presenting any witnesses. The defendant's principal argument on appeal is that, because the case against him was based on circumstantial evidence, the trial judge erred by denying the motion for a directed verdict. See *People v Davenport, supra.*

We turn first to *People v Garcia,* 398 Mich 250; 247 NW2d 547 (1976), in which the Supreme Court discussed the role of the appellate courts in reviewing denials of motions for directed verdicts.

"An appellate court tests the correctness of the denial of such motion by taking the evidence *presented by the prosecution* in the light most favorable to the prosecution and deciding if there was any evidence upon which the trier of fact could predicate a finding of guilty." (Emphasis in original.) 398 Mich at 256.

The dispute focuses on whether the prosecution presented "any [sufficient] evidence" that the defendant is the person who actually stole the furniture. The proof advanced by the prosecution to establish that element of the offense was circumstantial. But a jury may infer participation in a theft from the fact of possession of stolen property a short time after the theft. *People v Fry, supra, People v Williams, supra. Contra, People v Strawther,* 47 Mich App 504; 209 NW2d 737 (1973). Given the precedent, we could affirm without further comment, but we feel obliged to ad-

dress the defendant's argument based on *People v Davenport, supra,* because there is a clear inconsistency between the rule stated in *Davenport* and the result reached in *Fry* and other similar cases.

*Fry* and its kin are proof that the *Davenport* rule is more a rationale for a result, rather than a true objective standard which can be evenly applied in all cases. We often affirm convictions based on circumstantial evidence without extensive comment. See *e.g., People v Wingfield,* 62 Mich App 161; 233 NW2d 220 (1975), in which the defendant was convicted on a showing that money was in a drawer immediately before the defendant had access to the drawer and the money was missing immediately after the defendant left. In *Wingfield,* the evidence was circumstantial but the inculpatory inference was so strong that the jury and the reviewing judges had no trouble concluding that the facts were "inconsistent with any other reasonable hypothesis upon which the defendant's innocence may be maintained". 62 Mich App at 163.

It is equally easy to apply the *Davenport* rule where the evidence is obviously too weak to support a conviction. Evidence that a defendant was present in this state when a crime occurred may have some evidentiary value but, standing alone, it would never be sufficient to support a conviction. In such a case it would be easy to reverse on the grounds that the facts did not exclude all possible innocent hypotheses.

The problems arise when, as in the present case, the facts fall somewhere between the two extremes described in the preceding paragraphs. Here, we know that the furniture was stolen sometime between Friday night and Monday morning. We know that the defendant had been inside the

modular home less than one week before the theft. And, most important, we know that the defendant possessed the furniture on Monday morning and— according to his statement to a prosecution witness —had previously stored the furniture at his father's home for at least one day.

All of the evidence tending to prove that defendant actually stole the furniture is circumstantial. Therefore, according to *Davenport* we must ask if it is inconsistent with any other reasonable hypothesis upon which defendant's innocence may be maintained. If we applied that test literally, we would be forced to reverse the conviction. None of the evidence specifically disproves the suggested hypothesis that the defendant bought the furniture in Green Bay, Wisconsin, on Saturday or ·Sunday. But, for reasons outlined below, we decline to apply the test literally.

First, we believe that the implied distrust of circumstantial evidence is not warranted. Whether the evidence is "direct" or "circumstantial", we would not allow a conviction if we felt that the evidence was not sufficient to prove guilt beyond a reasonable doubt. To the extent that the rule requires the prosecution to disprove all negative theories, the test could never be met, even by direct evidence. Even with eye-witness testimony there are always innocent theories which are not specifically disproven. There will always be a chance that an eye-witness is honestly mistaken about an identification.

Second, there is a tendency to classify evidence as "direct" if the desired inference is compelling and to call it "circumstantial" if the inference is merely the most likely of several alternatives. One consequence is that the *Davenport* rule is not applied in all circumstantial evidence cases. Wig-

more offered the following example of what might happen if the definitions were strictly enforced:

"The following anecdote illustrates the conventional prejudice:

" '1916, Messrs. *L. Esarey* and *E. V. Shockley,* eds., Courts and Lawyers of Indiana (Vol. I, p 119). "[In the trial courts of early Indiana] the following case of circumstantial evidence is culled from the same 'Sketches' as the others. It happened in Judge Eggleston's court, presided over, however, by the associates. The case was for five dollars damages for killing a dog. The plaintiff testified that he saw the defendant pick up his rifle, run across a lot, rest it on a fence, saw a flash, heard the report, saw the dog fall, went up to him, and saw the bullet hole just behind his front leg. The evidence seemed conclusive. All appeared lost, but the defendant's attorney was not disconcerted. He knew the associates had just been reading a new law book, Phillipp's Evidence, which cautioned judges against the pitfalls of circumstantial evidence. He therefore recalled the witness, had him repeat his evidence and ended by asking him if he saw the bullet hit the dog. When the witness refused to testify to the fact, the lawyer casually observed to the court, 'A case of mere circumstantial evidence', and rested his cause. After due deliberation, the court announced, 'This is a plain case of circumstantial evidence; judgment for the defendant.' " ' " Wigmore on Evidence (3d ed), § 26, p 405.

We do not mean to suggest that the present defendant's argument is as absurd as the one set forth in the quotation. Were it so, we could have easily affirmed on authority of *Fry, Wingfield* and a host of similar cases. This is a close case, and that has forced us to examine the rule upon which the defendant's argument rests. We conclude that the rule is defective to the extent that it treats circumstantial evidence differently than direct evidence and to the extent that it requires the prose-

cution to *specifically* disprove all innocent theories. It should be sufficient if the prosecution proves its own theory beyond a reasonable doubt in the face of whatever contradictory evidence the defense may produce.

In *People v Fuller,* 395 Mich 451; 236 NW2d 58 (1975), the Supreme Court held that:

"It is for the trier of fact to determine if the prosecution has 'negate[d] every reasonable theory consistent with the defendant's innocence of the crime charged'." 395 Mich at 455.

For the most part, we agree with that statement. But we must still allow for the fact that, as a matter of law, some cases are simply too weak to go to the jury. The circumstantial evidence rule discussed and rejected herein represents one attempt to state an easily applied mechanical test for singling out those cases. We cannot suggest an alternative test which offers a comparable apparent ease of application. We prefer the more difficult test announced in *People v Royal,* 62 Mich App 756, 757-58; 233 NW2d 860 (1975):

"In passing on a motion for a directed verdict of acquittal in a criminal case, the reviewing court must 1) consider only the evidence which had been introduced at the time the motion was made * * * 2) view that evidence in the light most favorable to the prosecution * * * and 3) determine whether that evidence, if credible and believed, would justify a reasonable man in concluding that all elements of the crime were established beyond a reasonable doubt." (Citations omitted.)

See also *People v Fudge,* 66 Mich App 625; 239 NW2d 686 (1976), *People v Combs,* 69 Mich App 711; 245 NW2d 338 (1976).

Applying that test to the present case, we con-

clude that the conviction should be affirmed. We concede the physical possibility of the defendant's innocent theory, but the evidence presented makes innocence most unlikely. We hold that, as a matter of law, the evidence was sufficient to permit reasonable men to conclude that guilt was established beyond a reasonable doubt.

The defendant's other allegation of error has no merit. Even if the testimony was improper, it only duplicated other properly admitted testimony. The judge sustained the defendant's objection and gave an immediate cautionary instruction. There was no reversible error.

Affirmed.