PEOPLE v WALKER

Docket No. 78-4294. Submitted June 22, 1979, at Lansing.—Decided October 16, 1979.

Larry Walker was convicted of second-degree murder, Oakland Circuit Court, John N. O'Brien, J. The defendant appeals, alleging that 1) his conviction must be reversed because there was insufficient evidence to establish beyond a reasonable doubt that he committed the offense, 2) it was reversible error for the trial court not to grant his motion for a directed verdict of acquittal of the charge of first-degree murder, on the ground that there was no evidence offered on the element of premeditation and deliberation and 3) reversible error resulted from the prosecutor's making remarks, on two separate occasions, concerning the decedent's family. *Held:*

1. The conviction of the defendant was based on circumstantial evidence. There are two views as to what standard is to be employed in reviewing the sufficiency of the evidence in cases where a conviction is based entirely on circumstantial evidence. The better view is that it is sufficient for the prosecution to prove its own theory beyond a reasonable doubt in the face of whatever contradictory evidence the defense produces rather than that the prosecution must negate every reasonable theory consistent with the defendant's innocence of the crime charged. There was sufficient evidence presented for the trier of fact to conclude that the defendant had committed the crime of which he was convicted.

2. The prosecution presented sufficient evidence on the element of premeditation and deliberation to allow the trier of fact to consider the first-degree murder charge. The denial of

REFERENCES FOR POINTS IN HEADNOTES
[1] 30 Am Jur 2d, Evidence § 1125.
[2] 75 Am Jur 2d, Trial § 553.
[3, 4] 40 Am Jur 2d, Homicide § 52.
[5] 40 Am Jur 2d, Homicide §§ 52, 263-269, 274.
Homicide: presumption of deliberation or premeditation from the fact of killing. 86 ALR2d 656.
Homicide: presumption of deliberation of premeditation from the circumstances attending the killing. 96 ALR2d 1435.

the defendant's motion for a directed verdict of acquittal was not error.

3. The first remark made by the prosecutor concerning the decedent's family was objected to. However, this remark, standing alone, was not so prejudicial as to require reversal. The second remark, made in rebuttal, was not objected to. Appellate review in such an instance is foreclosed unless the failure to consider the issue would result in a miscarriage of justice. Such is not the case here.

Affirmed.

1. CRIMINAL LAW — EVIDENCE — CIRCUMSTANTIAL EVIDENCE — BURDEN OF PROOF — INNOCENT THEORIES.

The frequently stated rule, where the people's case is based on circumstantial evidence, is that the prosecution has the burden of proving that there is no innocent theory possible which will, without violation of reason, accord with the facts; however, that rule has proven unworkable in close cases and the better approach is to ask whether the evidence presented is sufficient to permit reasonable men to conclude that guilt has been established beyond a reasonable doubt where the physical possibility of the defendant's theory is not disproven, but the evidence presented makes innocence most unlikely.

2. CRIMINAL LAW — DIRECTED VERDICT OF ACQUITTAL — EVIDENCE — REASONABLE DOUBT — JURY.

It is proper to deny a motion for a directed verdict of acquittal if, when viewing the evidence presented by the prosecution in the light most favorable to the prosecution, there is sufficient evidence on each element of the charge upon which the jury could base a verdict of guilty beyond a reasonable doubt.

3. HOMICIDE — FIRST-DEGREE MURDER — PREMEDITATION — DELIBERATION.

To premeditate is to think about beforehand; to deliberate is to measure and to evaluate the major facets of a choice or problem.

4. HOMICIDE — FIRST-DEGREE MURDER — PREMEDITATION — DELIBERATION — THOUGHT PROCESS — REFLECTION.

Premeditation and deliberation characterize a thought process undisturbed by hot blood; while the minimum time necessary to exercise this process is incapable of exact determination, the interval between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a "second look".

5. HOMICIDE — FIRST-DEGREE MURDER — PREMEDITATION AND DELIB-
   ERATION — PRIOR RELATIONSHIPS — ACTIONS OF DEFENDANT —
   IMMEDIATE CIRCUMSTANCES — POST-HOMICIDE CONDUCT.

   Factors to be considered in a homicide case in determining
   whether an accused had an opportunity to subject his actions to
   a second look in determining premeditation and deliberation
   include: (1) the previous relationship of the parties, (2) the
   defendant's actions prior to the killing, (3) the circumstances of
   the killing itself, and (4) the defendant's conduct after the
   homicide.

6. HOMICIDE — FIRST-DEGREE MURDER — PREMEDITATION — DELIBER-
   ATION — DIRECTED VERDICT OF ACQUITTAL.

   A defendant's motion, in a homicide case, for a directed verdict of
   acquittal of first-degree murder was properly denied where
   there was sufficient evidence introduced on the element of
   premeditation and deliberation for the trier of facts to find
   premeditation and deliberation beyond a reasonable doubt.

7. CRIMINAL LAW — ARGUMENT OF COUNSEL — PRESERVING QUES-
   TION.

   Appellate review of alleged improprieties in a prosecutor's closing
   argument is precluded in the absence of any objection at trial
   unless failure to consider the issue would result in a miscar-
   riage of justice.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *Michael J. Modelski,* Assistant Prosecuting Attorney, for the people.

*James P. Lawson, P.C.* (by *David M. Lawson),* for defendant on appeal.

Before: CYNAR, P.J., and MACKENZIE, and L. W. CORKIN,* JJ.

CYNAR, P.J. Defendant Larry Walker was jury-convicted of second-degree murder, MCL 750.317;

* Former circuit judge, sitting on the Court of Appeals by assign-
ment pursuant to Const 1963, art 6, § 23 as amended in 1968.

MSA 28.549, and sentenced to 10 to 20 years in prison. He now appeals as of right.

The case against defendant was based on circumstantial evidence. Testimony at trial established that the decedent, Robert Brent, and a second man, Willie Dillon, drove to the Orchard Trace Apartments in Pontiac, shortly before 4 p.m. on January 9, 1977. Dillon went there to complete some repair work at the apartment of one Claudia Sylvester, with whom the defendant lived.

When the two men arrived, Dillon exited from the vehicle, but admonished the decedent to remain in the car. Dillon was aware of a prior serious dispute between Brent and Walker over a bad check passed by Brent to Walker.

Brent stayed behind while Dillon went up to the apartment. Defendant, wearing a blue lounging robe, answered the door, and informed Dillon that Ms. Sylvester was not home at the time. Dillon said that his tools were in the apartment, and that he would return later for them. Dillon left, and, after indicating to decedent his intention to do so, went to a gym in another portion of the apartment complex.

Shortly thereafter, a neighbor, Veronica Nance, who lived directly below defendant, heard the sound of someone or something falling on the floor of defendant's apartment. Next, the neighbor heard the door to Walker's apartment open and close and someone come down the stairs. Looking out a window, she saw a man enter a car and drive it to a point below defendant's apartment, blow his horn, and then yell out "Larry" or "Walker". She heard a sliding glass door open above her, then an argument ensued between the man at the car and a man upstairs.

The man at the car said he was sorry and

wanted to come back upstairs and explain. The voice upstairs said to leave. Ms. Nance then heard a shot and saw the man by the car fall to the ground. The sliding glass door closed.

Just before the shot was fired, Willie Dillon had returned from the gym. He saw decedent look up toward defendant's apartment and heard him say that "he would be back". He told decedent he was going up to the apartment and would be right back. At that time, he noticed a man wearing a robe standing in the window of defendant's apartment, but he was not certain it was Walker. Before reaching the apartment, Dillon heard a shot, ran down the stairs and to the parking lot. He found Brent lying on the ground, bleeding from his forehead. He returned to the apartment and was let in by defendant. After defendant finished with a phone call, he asked Dillon to "take something from me".

When the police arrived, they were not admitted into Walker's apartment for about five minutes. They had found a trail of blood leading from the apartment to decedent's body. There was blood smeared on both the inside and outside door knobs of the apartment. The blood on the door knobs was of the same type as decedent's.

The police found Brent lying in the parking lot with a towel in his left hand. It too was smeared with blood of his type. The chief pathologist for Oakland County found that decedent had a small laceration on the tip of his nose, and blood was also found inside his nose. He also stated that the angle of entry of the bullet which struck decedent in the forehead indicated that it was fired from above.

Upon examining the screen door opening onto the balcony of defendant's apartment, a hole was

found, approximately 1/2″ in diameter. Gunpowder residue was found surrounding the hole, with no dust on top of it. No murder weapon was ever found.

Defendant first contends that his conviction must be reversed because there was insufficient evidence to establish beyond a reasonable doubt that he committed the offense. Since the conviction was based solely on circumstantial evidence, defendant argues that it is incumbent upon the prosecution to rebut every reasonable theory consistent with defendant's innocence. This the prosecution failed to do, according to defendant.

There is a split of authority in this Court over what standard is to be employed in reviewing the sufficiency of the evidence in cases where the conviction is based entirely on circumstantial evidence.

In *People v Davenport,* 39 Mich App 252, 257-258; 197 NW2d 521 (1972), a panel of this Court held that, where all the evidence in the case is circumstantial, the prosecution is obliged to negate every reasonable theory consistent with the defendant's innocence of the crime charged.[1]

A second standard was established in *People v Edgar,* 75 Mich App 467, 469-474; 255 NW2d 648 (1977), where the Court first noted that the *Davenport* rule was not being applied in all circumstantial evidence cases and had proved unworkable in close cases. The *Edgar* Court then held that the *Davenport* rule was defective to the extent that it treated circumstantial evidence differently than

---

[1] Other cases espousing this view include, *inter alia: People v Wingfield,* 62 Mich App 161, 163; 233 NW2d 220 (1975), *People v Jablonski,* 70 Mich App 218, 225; 245 NW2d 571 (1976), *People v Ridgeway,* 74 Mich App 306, 316-317; 253 NW2d 743 (1977), *People v Samuel Smith,* 85 Mich App 404, 410-411; 271 NW2d 252 (1978), *People v Little,* 87 Mich App 50, 53-54; 273 NW2d 583 (1978).

direct evidence and to the extent that it required the prosecution to *specifically* disprove all innocent theories and that it is sufficient for the prosecution to prove its own theory beyond a reasonable doubt in the face of whatever contradictory evidence the defense produces. *Edgar, supra,* 473-474.

The *Edgar* Court opined that it would be impossible for the prosecution to disprove all innocent theories, even by direct evidence. Beyond this, it was felt that the implied distrust of circumstantial evidence was unwarranted and that such evidence was no less trustworthy or probative of guilt than direct evidence. *Edgar, supra,* 472-473.[2] Finally, the Court held that, in lieu of requiring the prosecutor to *specifically* disprove all innocent theories, resolution of the question of whether the prosecutor had done so is properly for the trier of fact. *Edgar, supra,* 474, *People v Fuller,* 395 Mich 451, 455; 236 NW2d 58 (1975).

We are persuaded that *Edgar* and its progeny represent the better approach. Under that standard, we have no difficulty in concluding that there was sufficient evidence for the trier of fact to conclude that the defendant had committed the crime of which he was convicted, notwithstanding the theory proffered by defendant at trial, that Willie Dillon had actually killed Robert Brent.

Defendant next assigns as reversible error the failure of the trial court to grant his motion for a directed verdict of acquittal on the charge of first-degree murder. He claims that no evidence was offered on the element of premeditation and deliberation. As a consequence of this, the jury was

---

[2] Among the cases adopting the *Edgar* rationale are: *People v Sherman Hall,* 77 Mich App 456, 463; 258 NW2d 517 (1977), *People v Johnson,* 83 Mich App 1, 17-18; 268 NW2d 259 (1978), *People v Haney,* 86 Mich App 311, 318; 272 NW2d 640 (1978), *People v Robertson,* 87 Mich App 109, 113; 273 NW2d 501 (1978).

permitted to consider a charge unwarranted by the proofs, thus decreasing his chances of acquittal on any valid charge because of the possibility of a compromise verdict. We reject this contention.

It is proper to deny a motion for a directed verdict of acquittal if, when viewing the evidence presented by the prosecution in the light most favorable to the prosecution, there is sufficient evidence on each element of the charge upon which the jury could base a verdict of guilty beyond a reasonable doubt. *People v Royal,* 62 Mich App 756, 757-758; 233 NW2d 860 (1975), *People v Scott,* 72 Mich App 16, 19; 248 NW2d 693 (1976), *People v Neal,* 83 Mich App 102, 105; 268 NW2d 303 (1978), *People v Edgar, supra,* 474-475.

In *People v Morrin,* 31 Mich App 301; 187 NW2d 434 (1971), Judge, now Justice, LEVIN defined premeditation and deliberation as follows:

"To premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem. As a number of courts have pointed out, premeditation and deliberation characterize a thought process undisturbed by hot blood. While the minimum time necessary to exercise this process is incapable of exact determination, the interval between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a 'second look'." *People v Morrin, supra,* 329-330.

In *People v Meadows,* 80 Mich App 680; 263 NW2d 903 (1977), this Court stated that:

"Factors to be considered in determining whether the accused had an opportunity to subject his actions to a second look include: (1) the previous relationship of the parties, (2) the defendant's actions prior to the actual killing, (3) the circumstances of the killing itself, and (4)

the defendant's conduct after the homicide." *People v Meadows, supra,* 691.

Therefore, we must examine these four factors to determine if any evidence of premeditation and deliberation was presented by the prosecution.

Looking at the previous relationship of the parties, we find evidence of continuing acrimony between defendant and decedent over a bad check given defendant. In addition, testimony was heard to the effect that defendant had threatened to "fuck up" the victim if the check was ever mentioned to Walker by the decedent again.

With regard to defendant's actions prior to the killing, there was evidence that Brent was in the defendant's apartment just prior to the killing and that the two had scuffled at the time, resulting in Brent receiving an injury to his nose. Also, when the victim returned to the parking lot below defendant's balcony, he yelled up to Walker that he was sorry and wished to explain. Defendant responded by telling him to "get the fuck out of here".

The circumstances were such that defendant had ample opportunity between the time Brent left after the scuffle and when he returned in his car to take a second look or to cooly reflect on the nature of his response.

Further, immediately after the killing, defendant was very slow in answering the door when the police arrived. He asked Willie Dillon to "take something from me". He also told the police he was unaware Brent was dead, when, in fact, Dillon had only minutes earlier informed him that he thought Brent was dead.

Without intimating that all the above evidence is consistent with a finding of premeditation and deliberation, it is nonetheless clear that evidence

sufficient to find defendant guilty beyond a reasonable doubt was introduced by the people on this element. Thus, it was not error for the trial judge to deny defendant's motion for a directed verdict.

Defendant's final contention, that reversible error was committed as a result of the prosecutor making remarks, on two separate occasions, concerning the decedent's family, is without substance. In the first instance, a question posed to a witness as to what the decedent's family might say was objected to and the objection sustained prior to the witness responding. We do not find this question, standing alone, to be so prejudicial as to require reversal. *People v Brocato,* 17 Mich App 277; 169 NW2d 483 (1969).

As the remarks of the prosecutor in rebuttal argument[3] were not objected to, appellate review is foreclosed unless the failure to consider the issue would result in a miscarriage of justice. *People v Duncan,* 402 Mich 1, 16; 260 NW2d 58 (1977), *People v Alcala,* 396 Mich 99, 100; 237 NW2d 475 (1976). Such is not the case here. In addition, the remarks were not so improper that any prejudicial effect therefrom could not have been eliminated by a curative instruction if one had been requested upon a timely objection. *People v Duncan, supra,*

---

[3] In rebuttal argument, the prosecutor stated:

"And oftentimes, I, on occasion hear comments about the defendant and that jury's *[sic]* have the future of that individual in their hands. That is true, but not really in retrospect, because it is not the jurors who find the defendant guilty, it is the defendant who finds himself guilty by his own actions, because he's the one who put himself in this position, and if he had altered his behavior in the first place, if he wouldn't violate the laws and deprive other people of the right to live, he wouldn't be in that situation.

"A juror doesn't find him guilty, it's his own behavior, not the jury's. Counsel speaks in terms of individuals here. We've got Mr. Walker, and look ahead what's in store for him. Well, there's nothing in store for for *[sic]* Robert Brent, he's dead and in the ground right now, and what's in store for Robert Brent's three children without their father. And what's in store for Mrs. Brent."

17, *People v Hall,* 396 Mich 650, 655; 242 NW2d 377 (1976).

Finding no error which would merit reversal, we hereby affirm defendant's conviction.

Affirmed.