PEOPLE v KRAMER

Docket No. 53343. Submitted May 11, 1981, at Lansing.—Decided July 28, 1981.

Larry Kramer and a codefendant were convicted of armed robbery, kidnapping, and three counts of assault with intent to commit murder following a joint trial, Oakland Circuit Court, John N. O'Brien, J. He appeals. *Held:*

1. Any error occasioned by the trial court's admission of evidence of the defendant's commission of a prior, unspecified felony for the purpose of impeachment was harmless, overwhelming evidence of the defendant's guilt having been presented.

2. The trial court properly concluded that the defendant did

REFERENCES FOR POINTS IN HEADNOTES

[1] 29 Am Jur 2d, Evidence § 327.
   81 Am Jur 2d, Witnesses § 580.
   Construction and application of Rule 609 (a) of the Federal Rules of Evidence permitting impeachment of witness by evidence of prior conviction of crime. 39 ALR Fed 570.
[2] 29 Am Jur 2d, Evidence § 418.
   68 Am Jur 2d, Searches and Seizures §§ 2, 4.
   Nature of interest in, or connection with, premises searched as affecting standing to attack legality of search. 78 ALR2d 246.
[3] 52 Am Jur 2d, Malice § 7.
   75 Am Jur 2d, Trial § 719.
[4] 40 Am Jur 2d, Homicide § 568 *et seq.*
[5] 30 Am Jur 2d, Evidence § 1172.
[6] 21 Am Jur 2d (Rev), Criminal Law §§ 167, 175, 176.
   Acquittal of principal, or his conviction of lesser degree offense, as affecting prosecution of accessory, or aider and abettor. 9 ALR4th 972.
[7] 29 Am Jur 2d, Evidence § 288.
   79 Am Jur 2d, Weapons and Firearms § 13.
[8] 76 Am Jur 2d, Trial § 1080.
[9] 81 Am Jur 2d, Witnesses §§ 619, 626.
[10] 29 Am Jur 2d, Evidence §§ 371, 372.
[11] 75 Am Jur 2d, Trial § 21.
   Antagonistic defenses as ground for separate trials of codefendants in criminal case. 82 ALR3d 245.

not have standing to challenge the search by police of a stolen van and thus properly denied his motion to suppress evidence seized subsequent to the search.

3. The trial court properly instructed the jury on the element of malice relative to the crime of assault with intent to commit murder.

4. The prosecution presented sufficient evidence of defendant's participation in the crimes charged to sustain his conviction.

5. Sufficient evidence was presented to convict defendant as an aider and abettor of the crime of assault with intent to commit murder.

6. The trial court properly admitted evidence of weapons found in a van driven by a codefendant.

7. The trial court properly denied defendant's motion for a new trial.

8. The trial court properly allowed the prosecution to impeach its own witness.

9. The trial court properly denied defendant's motions for a separate trial or an empaneling of a separate jury.

Affirmed.

1. WITNESSES — CRIMINAL LAW — IMPEACHMENT — PRIOR UNSPECIFIED FELONY CONVICTIONS.

The allowance by a trial court of impeachment of a defendant by the introduction of evidence of a prior, unspecified felony conviction constitutes error, but such error is harmless where the evidence of the defendant's guilt is overwhelming.

2. SEARCHES AND SEIZURES — STANDING.

A defendant who has no reasonable expectation of privacy in an area searched by police does not have standing to challenge the search and subsequent seizure of evidence.

3. CRIMINAL LAW — JURY INSTRUCTIONS — MALICE.

A trial court's charge to a jury on malice is proper where it is a word-for-word rendition of the Michigan Criminal Jury Instructions.

4. ASSAULT AND BATTERY — ASSAULT WITH INTENT TO COMMIT MURDER.

Proof that a defendant intended to commit either first- or second-degree murder establishes the mental element of assault with intent to commit murder.

5. Criminal Law — Evidence — Circumstantial Evidence — Burden of Proof.

A prosecutor need only present direct or circumstantial evidence establishing the elements of a crime beyond a reasonable doubt in the face of the production of evidence by the defendant to the contrary to establish a defendant's guilt; he need not negate every reasonable hypothesis consistent with the defendant's innocence.

6. Criminal Law — Aiding and Abetting.

A person may be prosecuted for aiding and abetting the commission of a crime regardless of whether the principal is convicted or acquitted; proof must be offered that the crime was committed by someone and that the defendant either committed the crime or aided and abetted its commission.

7. Criminal Law — Evidence — Weapons.

Weapons found in the possession of an accused may be introduced into evidence without proof that they were the same weapons used by the accused in the commission of the crime charged where such weapons may have been so used.

8. Appeal — Mistrial.

Denial by a trial court of a defendant's motion for a mistrial will not be reversed on appeal absent an affirmative showing of prejudice to the rights of the defendant.

9. Witnesses — Impeachment.

A party may attack the credibility of his own witness where the witness's testimony is contrary to that anticipated and is injurious to his case (MRE 607[2][C]).

10. Witnesses — Evidence — Hearsay — Prior Identification.

A witness's prior statement identifying a defendant after perceiving him is not hearsay and is admissible during trial as testimony subject to cross-examination (MRE 801[d][1]).

11. Criminal Law — Separate Trials — Separate Juries — Appeal.

A defendant is not entitled to a trial separate from a codefendant or the empaneling of a separate jury as of right, but a separate trial is advisable where the defenses are antagonistic; to support a motion for a separate trial, a defendant must prove that a joint trial will infringe upon his substantial rights, and on appeal the Court of Appeals will not reverse a trial court's denial of a motion for a separate trial where the defendant has not supported his allegation of antagonistic defenses by an

affidavit defining the inconsistencies between the defenses of the codefendants.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *Richard C. Browne,* Assistant Prosecuting Attorney, for the people.

*Lawson & Lawson, P.C.,* for defendant on appeal.

Before: R. M. MAHER, P.J., and ALLEN and CYNAR, JJ.

ALLEN, J. Following a joint jury trial, defendant and his codefendant and brother, Jeffrey Kramer, were each found guilty of armed robbery, MCL 750.529; MSA 28.797, kidnapping, MCL 750.349; MSA 28.581, and three counts of assault with intent to commit murder, MCL 750.83; MSA 28.278. Sentenced August 1, 1979, to five concurrent terms of imprisonment of from 10 to 30 years, defendant appeals of right, assigning nine grounds for reversal.

The incidents for which defendant was convicted took place in the early morning hours of April 3, 1978, when defendant and his brother, wearing ski masks and brandishing shotguns, entered the Red Oaks Bar in Wixom. They forced the barmaid and customers to lie on the floor, extracted money from their wallets, and, upon being discovered by officers from the Wixom and Wolverine Lake Police Departments, fled in a copper-orange colored pickup truck after firing a shot which struck one of the officers in the hand. The robbers took the barmaid, Marion Molk, as a hostage. At two different locations, roadblocks were set up, but each time the robbers escaped after exchanging gunfire

with the police. Eventually the truck was abandoned, and the two robbers escaped on foot, leaving the hostage lying unharmed in the pickup truck. A box of shotgun shells was found lying near the shoulder of the road next to the abandoned truck. A sawed-off, single barrel shotgun was found lying on the shoulder of the road to the rear of the truck on the passenger side. On the morning of April 13, 1978, defendant and his girlfriend entered the ticket office in the terminal building at the Detroit Metropolitan Airport. There he was arrested by officers of the Oakland County Sheriff's Department, and a .38-caliber revolver was removed from his waistband. During trial, the arresting officer stated that the weapon was "loaded and ready to go".

The arresting officer took defendant outside and placed him in his patrol car. At that moment, one of the officers saw a blue van and recognized Jeffrey Kramer as the driver. Jeffrey Kramer was promptly arrested, and a loaded handgun was removed from his trousers. After the two prisoners were secured, one of the arresting officers, Mark Goodrich, drove the van to the Sheriff's Annex at the airport where the van was searched. Four shotguns and several rifles were found in the van. Further details of the robbery and arrests appear in the opinion of this Court on the appeal of the codefendant, Jeffrey Kramer. *People v Kramer,* 103 Mich App 747, 750-753; 303 NW2d 880 (1981).

The trial court denied motions for separate trials and further denied a motion to preclude the introduction of evidence of the shotguns and rifles found in the van when it was searched by the Oakland County Sheriff's Department. The court held that defendant, Larry Kramer, had no standing to object to the search of the vehicle in which

the codefendant, Jeffrey Kramer, was sitting when arrested. The court also stated that there was a sufficient exigency to justify the deputy's second entry into the van.

During trial, prior to the prosecution's resting its case, defendant moved, *in limine,* to preclude the prosecution from impeaching defendant by evidence of three prior convictions within the previous ten years. Defendant acknowledged convictions for breaking and entering with intent to commit larceny,' carrying a concealed weapon, and gross indecency. The court ruled that should defendant take the stand the prosecution could question defendant regarding the three prior convictions but could not elicit the details of the crimes or the labels or titles of the offenses. Later during the trial, defense counsel stated on the record that his client declined to testify because of fear of undue prejudice if his prior record were made known to the jury.

1. *Did the trial court commit error requiring reversal in ruling that the defendant could be impeached by use of evidence of his prior convictions but that only the fact of the prior convictions, and not the nature or details of the crimes could be elicited?*

While this Court has split on the question, the weight of authority indicates that impeachment by evidence of prior, unspecified felony convictions clearly constitutes error. *People v Vincent,* 94 Mich App 626, 633; 288 NW2d 670 (1980), *People v Jones,* 92 Mich App 100, 109-112; 284 NW2d 501 (1979), *People v Graves,* 98 Mich App 112, 116-117; 296 NW2d 4 (1979), *People v Dixon,* 99 Mich App 847, 849; 298 NW2d 647 (1980). *Contra. People v Huff,* 101 Mich App 232, 248-252; 300 NW2d 525 (1980). However, such error is harmless where the

evidence of guilt is overwhelming. *People v Makidon,* 84 Mich App 287, 289; 269 NW2d 568 (1978), *People v Moseley,* 94 Mich App 461, 465; 290 NW2d 39 (1979), *People v Mustafa,* 95 Mich App 583, 585; 291 NW2d 130 (1980), *People v Ovegian,* 106 Mich App 279; 307 NW2d 472 (1981). As set forth later in this opinion,[1] the evidence against defendant, although circumstantial, was overwhelming, particularly the evidence linking him to the blue van and to the weapons found therein. Defendant's main defense—lack of identification— would have been put severely to the test had defendant elected to testify. This, rather than fear of exposure by prior convictions, we believe, was the true reason that defendant declined to testify. We reject defendant's argument that an error "can't be harmless" where the defendant does not take the stand. In support of this assertion counsel points out that in *Moseley* and *Ovegian* the defendant did not testify and that in *Makidon* and *Mustafa* the opinion fails to disclose whether defendant testified or not. The inference to be drawn from counsel's argument is that there is no case holding that an error in admitting a prior conviction is harmless where a defendant does not testify. However, a check of the record and file in *Makidon* does disclose that defendant elected to remain silent after the trial court declined to exclude evidence of defendant's prior criminal convictions.

2. *Did the trial court err in denying defendant's motion to suppress evidence seized from the van pursuant to a search warrant, where the defendant was neither the owner nor the occupant of the van and where certain facts articulated in the affidavit for the search warrant were discovered by*

---

[1] See Issue 4, *infra.*

*the affiant officer upon entering the van to drive it
to the police station after a codefendant's arrest?*

The blue van in which the weapons were found
was a stolen vehicle. Neither defendant nor his
brother were the owners or lessees, and defendant
was not a passenger in the vehicle when the
weapons were seized. In *Rakas v Illinois,* 439 US
128, 134; 99 S Ct 421; 58 L Ed 2d 387 (1978), the
defendants were passengers in a car which they
neither owned nor leased, yet one which they were
using with the owner's permission. Nevertheless,
the United States Supreme Court held the defen-
dants lacked standing because they had no reason-
able expectation of privacy in the place searched.
In accord with *Rakas* are *United States v Salvucci,*
448 US 83; 100 S Ct 2547; 65 L Ed 2d 619 (1980),
and *Rawlings v Kentucky,* 448 US 98; 100 S Ct
2556; 65 L Ed 2d 633 (1980). Since defendant's
interest in the van in the instant case was even
less than that of the defendants in *Rakas, et al.,*
we conclude that defendant lacked standing to
contest the search. Furthermore, the identical
claim was made by defendant's brother and was
rejected in *Kramer, supra,* on grounds that the
search was a permissible inventory search.

3. *Did the trial court's instructions on the crime of
assault with intent to commit murder, to which no
objection was made, constitute error?*

Defendant challenges the jury instruction given
on the crime of assault with intent to commit
murder. Defendant claims that the instruction was
deficient because it failed to state that only actual
malice—a specific intent to kill—rather than im-
plied malice—an intent to cause serious bodily
harm or risk of death—is required. Defendant's
argument is flawed in three respects. First, the
instructions were taken directly from the Michi-
gan Criminal Jury Instructions, CJI 18:1:01, and

included an instruction on specific intent, CJI 3:1:16. Second, the instruction on malice was in accord with existing law. *People v Moncure,* 94 Mich App 252, 256; 288 NW2d 675 (1979), *vacated on other grounds* 409 Mich 905; 295 NW2d 494 (1980). See CJI 16:3:01. Third, this Court has held that proof that a defendant intended to commit either first- or second-degree murder establishes the mental element of assault with intent to commit murder. *People v Branner,* 53 Mich App 541, 544-546; 220 NW2d 183 (1974), *lv den* 392 Mich 814 (1974), *People v Eisenberg,* 72 Mich App 106, 114-116; 249 NW2d 313 (1976), *lv den* 401 Mich 803 (1977). Thus, the instruction on malice did not constitute error.

4. *Was sufficient evidence presented to establish the identity of defendant as one of the two individuals involved in the crimes charged?*

Citing *People v Davenport,* 39 Mich App 252; 197 NW2d 521 (1972), defendant claims that the evidence linking him to the crimes charged was all circumstantial and as such was insufficient to connect him to the crimes charged. Because the two robbers wore ski masks and gloves during the robbery and the flight in the truck, the barmaid and hostage were unable to identify the individuals charged except to the extent that one was bigger than the other and that during the flight in the truck they called one another "Larry" and "Jackson". Thus, all of the evidence linking the defendant to the offenses charged was circumstantial.

However, contrary to defendant's assertion, the circumstantial evidence was overwhelming. Evidence adduced at trial established, *inter alia,* the following facts: (1) during the month prior to the robbery, the codefendant, Jeffrey Kramer, fre-

quently drove a copper-orange pickup truck to defendant's home; (2) defendant and Jeffrey Kramer utilized the pickup truck on two occasions during the evening prior to the robbery; (3) the pickup truck which the two men abandoned and from which they fled on foot matched the copper-orange color pickup truck which Jeffrey Kramer was observed driving during the month prior to the robbery; (4) the pickup truck was abandoned just 2-1/2 to 2-3/4 miles from the house in which defendant resided with his girlfriend, Debora Cox; (5) the sawed-off shotgun found behind the abandoned pickup truck was the same gun which Larry Kramer had loaned to his brother-in-law and which was returned to Larry during Thanksgiving, 1977; (6) a shotgun found in the blue van at the airport was linked ballistically to the shootings at the Red Oak Bar and during the chase; (7) Jeffrey and Larry drove Larry's girlfriend to the airport in the blue van; and (8) the blue van was a stolen vehicle.

Defendant argues that, taken in the light most favorable to the prosecution, such evidence does no more than show that defendant lived near the scene of the crime, had the opportunity to commit the crime, and subsequently assisted his brother in an effort to flee from the area, knowing that a crime had been committed. Counsel argues that because the evidence does not *require* a conclusion that defendant committed the crime (but only that someone, perhaps Jeffrey Kramer, committed the offense), under *Davenport,* the evidence is insufficient. There is presently a split in this Court over the rule to apply where a defendant's participation in a crime, and ultimately a defendant's guilt, is established by circumstantial evidence only. *Davenport* requires the prosecution to negate every

reasonable hypothesis consistent with a defendant's innocence. *People v Edgar,* 75 Mich App 467; 255 NW2d 648 (1977), rejects this view, holding that the prosecution need only present evidence, direct or circumstantial, establishing the elements of the crime beyond a reasonable doubt in the face of whatever contradictory evidence is produced by the defense.[2]

The instant case is an excellent example of the legal consequences flowing from the distinction between the standard announced in *Davenport* and the standard of review in *Edgar.* In *People v Orsie,* 83 Mich App 42; 268 NW2d 278 (1978), this Court followed *Edgar,* and the Supreme Court denied leave to appeal. 408 Mich 857 (1980). This panel finds that the better reasoning, and the reasoning consistent with the majority view, was expressed in *Edgar* and further finds that under *Edgar* and *Orsie* sufficient evidence of defendant's participation in the offenses charged was presented beyond a reasonable doubt.

*5. Was sufficient evidence presented to establish that the defendant, rather than codefendant, Jeffrey Kramer, fired the shotgun in the Red Oaks Bar, striking the police officer?*

We disagree with defendant's claim that, because the evidence did not establish which of the two brothers fired the shot striking Sergeant Beamish, defendant could not be convicted as an aider and abettor on the theory "that someone must have discharged the gun at Sergeant Beamish". Carried to its logical conclusion, defendant's claim would preclude convicting either brother. In

---

[2] For lists of cases following the *Davenport* rule and cases following the doctrine in *Edgar,* see *People v Walker,* 93 Mich App 189, 194-195, fns 1 and 2; 285 NW2d 812 (1979), and *People v Williams,* 94 Mich App 406, 415-416; 288 NW2d 638 (1979).

*People v Mann,* 395 Mich 472, 477-478; 236 NW2d 509 (1975), this Court stated:

"In *People v Palmer,* 392 Mich 370, 378; 220 NW2d 393 (1974), we reaffirmed the rule that a person may be prosecuted for aiding and abetting without regard to the conviction or acquittal of the principal. '[Aiding and abetting] comprehends all words or deeds which may support, encourage or incite the commission of a crime.' The conviction of the principal is not necessary to convict an accessory. What must be proven, however, is that the crime was committed by someone, and that the defendant either committed or aided and abetted the commission of that crime."

Thus, whether or not defendant was the principal in the assault upon the officer is irrelevant so long as the evidence establishes that the defendant aided and abetted the assault.

While it is true that an aider and abettor of a specific intent crime, if not himself possessed of the specific intent, must be shown to know that the principal possessed the requisite intent, it is also true that intent is a question of fact which may be inferred from surrounding circumstances. In the instant case, the surrounding circumstances disclosed that both brothers carried loaded shotguns, both covered their faces with masks, a shot was fired at the bar, a hostage was taken to effect an escape, and numerous shots were exchanged with officers during the subsequent chase. These were facts from which the jury reasonably could conclude that each brother knew that the other possessed the intent, if necessary, to use the weapon and commit all acts, including murder (either first or second degree) if necessary, to accomplish the robbery. Additionally, we note that no objection was made to the instruction on aiding and abetting.

6. *Did the introduction of evidence of three shot-guns seized from a van which the codefendant was driving at the time of the codefendant's arrest some two weeks after the robbery, kidnapping, and assault for which defendant was being tried during joint trial of defendant and his codefendant constitute error?*

Four shotguns were found during the search of the blue van at the airport. Only one, a sawed-off shotgun, was tied ballistically to the robbery of the Red Oaks Bar. The remaining three shotguns were admitted in evidence over defendant's objection. Defendant contends that this was error since their probative value was outweighed by their prejudicial effect, particularly because the prosecution thus was able to argue to the jury that, when arrested, the defendants were "armed to the teeth", implying that defendants were men of bad character. We disagree. The identical argument was made by the codefendant in *Kramer, supra,* 759-760, and was rejected:

"Since the shotguns were similar to that allegedly held by the second robber, we can discern no abuse of discretion in their admission. Further, we do not think it is essential that a weapon be tied ballistically to a crime in order to be admissible. Since such weapons were fired on police officers during the escape, they might have been the ones that were used.

\* \* \*

"We believe the trial court's admission of three additional shotguns does not require reversal, even if it constituted error. The other circumstantial evidence in the case was very strong, and we are convinced beyond a reasonable doubt that the jury would have convicted the defendant without the erroneously admitted evidence. *People v Norwood,* 70 Mich App 53; 245 NW2d 170, *lv den* 397 Mich 884 (1976)."

Weapons found in an accused's possession may be introduced into evidence without proof that they were the same weapons used by the accused in the crime, if the weapons found might have been used by the accused. *People v Hall,* 19 Mich App 95, 98; 172 NW2d 473 (1969), *People v Rojem,* 99 Mich App 452, 458-459; 297 NW2d 698 (1980). Where, as in the instant case, the evidence against a defendant is largely circumstantial, the probative value of the evidence is heightened. *People v Howard,* 391 Mich 597, 602-606; 218 NW2d 20 (1974), *Hall, supra,* 108 (LEVIN, J., concurring in part and dissenting in part).[3] Although defendant was not in the van when it was seized and searched, defendant's girlfriend testified that she was driven to the Detroit Metropolitan Airport in a blue van by Jeffrey and Larry Kramer and that when they arrived Larry went inside with her and was arrested by police officers.

*7. Did the trial court err in denying defendant's motion for a mistrial which was based on the statements of a police witness that other weapons were discovered in the van and that a gun taken from defendant when arrested was "loaded and ready to go"?*

Officer Goodrich's statement that the gun taken from defendant's person was "loaded and ready to go" was unsolicited, and defendant's objection thereto was immediately sustained. Standing alone, we do not find the statement to be prejudicial. The officer's further reference to other weapons in the van was also unsolicited and unantici-

---

[3] In his dissent opposing the introduction of evidence of a gun found two days after the crime, Judge (now Justice) LEVIN acknowledged that "Where the people's case is based largely or entirely on circumstantial evidence * * * the probative value of the evidence will generally outweigh the danger of confusing the issues or prejudicing or misleading the jury".

pated. The identical issue was considered in *Kramer, supra,* and was found not to constitute grounds for reversal. Our Court explained:

"The remark was no more than an unsolicited response to a legitimate question by the prosecutor concerning the location in the van of the three shotguns admitted as evidence. Further, the statement did not necessarily refer to weapons other than the three shotguns. It is equally possible that the jury interpreted Goodrich's remark as referring to evidence of remaining shotguns already admitted." *Id.,* 757.

We find no abuse of discretion in the denial of defendant's motion for a new trial.

8. *Did the trial court err in permitting the prosecution to impeach one of its witnesses who failed to identify the defendants in court by allowing another witness to testify that the prosecution's witness did identify defendants on a prior occasion at a lineup?*

During trial, a prosecution witness testified that a few days prior to the armed robbery she saw two men in a pickup truck matching the description of the truck used in the incident. When asked by the prosecution to identify the two individuals, the witness stated that she did not recognize either person. Over objection, she then was permitted to testify that at two separate lineups held in October, 1978, she had identified the two individuals. Subsequently, a detective was allowed to testify that he had attended the lineups at which the prosecution witness identified the two brothers.

MRE 607(2)(C) permits the calling party to attack the credibility of its own witness if the witness's testimony is contrary to that which the calling party had anticipated and was actually

injurious to the calling party's case. The record demonstrates that the prosecution genuinely was surprised when the witness failed to identify either brother. Contrary to defendant's claim, the prosecutor had prepared his case, deposing the witness in the presence of defense counsel prior to trial. On that occasion, there was no indication that the witness could not recognize the defendants. When recalled to the stand, the witness did identify the two defendants and explained that she failed to identify them when first asked at trial because she "wasn't sure that I had the proper time to identify anyone". We find the explanation acceptable, particularly because on recall the witness did identify the defendants.

MRE 801(d)(1) provides additional grounds for the trial court's allowance of the witness's subsequent testimony identifying each defendant. Under MRE 801(d)(1), a prior statement of identification made by a witness after previously perceiving the defendant is not hearsay and is freely admissible in a case in chief, provided the witness testifies during trial and is subject to cross-examination by the opposing party. See *People v Washington,* 84 Mich App 750, 755-756; 270 NW2d 511 (1978), *People v Prophet,* 101 Mich App 618, 623; 300 NW2d 652 (1980).

9. *Where the defendant requested separate trials, or, in the alternative, the empaneling of separate juries, each to consider the case of the individual defendants, and where each defendant argued that guilt should be attributable to the other, did the trial court err in refusing to permit separate trials or separate juries?*

The identical argument was made on appeal by counsel in *Kramer, supra,* 753-754, and was rejected by this Court.

"The decision on a motion for separate trials is one left to the discretion of the trial court. MCL 768.5; MSA 28.1028, *People v Wright (On Remand),* 99 Mich App 801, 821; 298 NW2d 857 (1980). In *People v Hurst,* 396 Mich 1, 6-9; 238 NW2d 6 (1976), the Supreme Court held that separate trials are not a defendant's right, but are advisable where the defendants' separate defenses are antagonistic. To support the motion, a defendant must prove that a joint trial will infringe upon his 'substantial rights'. *People v Wright, supra,* citing *People v Carroll,* 396 Mich 408; 240 NW2d 722 (1976). In the instant case, counsel for codefendant Larry Kramer alleged that a refusal of separate trials would place the defendants in an antagonistic position. However, neither attorney nor defendant provided support for this allegation at trial. Absent any factual predicate for an affirmative showing of prejudice, we are unable to conclude that the trial court abused its discretion in denying defendant's motion."

A conclusionary statement of antagonistic defenses must be supported by an affidavit defining the inconsistencies between the defenses of the parties in order for this Court to find an abuse of discretion in not ordering separate trials. *People v Smith,* 73 Mich App 463; 252 NW2d 488 (1977), *lv den* 402 Mich 803 (1977). In *People v Gunter,* 76 Mich App 483, 489; 257 NW2d 133 (1977), this Court stated that upon moving for separate trials "defendants must clearly, affirmatively and fully show that substantial rights will be prejudiced by a joint trial". Defendant failed to follow the requirements of *Smith* and *Gunter.*

Defendant argues that he is entitled to a separate trial because there was greater evidence linking Jeffrey Kramer to the pickup truck. In every joint trial, there will be some evidence more closely related to one defendant than the other. The question is whether the closer relationship is prejudicial. Though the truck was used mainly by

Jeffrey, the testimony of Debora Cox clearly established that both defendants were in the truck shortly before the robbery, that when she went to sleep both defendants were at the house and the truck was in the yard, and that when she woke up both defendants were at the house but the truck was gone. Consequently, we find no prejudice. If anything, Jeffrey Kramer was the only one potentially prejudiced because Larry Kramer refused to join in presenting an alibi defense.

The standard for determining whether separate juries should be empaneled is identical to that for ruling on a motion for a separate trial. *Kramer, supra,* 755. There being no error in the trial court's ruling on defendant's motion for a separate trial, we find no error in its refusal to empanel separate juries.

Affirmed.