857 F.2d 1474
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Linzie GARDNER, Petitioner-Appellant,
v.
Dale FOLTZ, Respondent-Appellee.
 No. 87-1821.
 United States Court of Appeals, Sixth Circuit.
 Sept. 16, 1988.
 
 Before NATHANIEL R. JONES and RALPH B. GUY, Jr., Circuit Judges, CARL B. RUBIN, District Judge.*
 PER CURIAM.
 
 
 1
 Petitioner filed a petition for a writ of habeas corpus seeking redress from his conviction for assault with intent to commit murder. Petitioner asserts that the trial court improperly used his prior trial testimony at his retrial and improperly instructed the jury. Adopting a magistrate's report and recommendation following an evidentiary hearing, the district court denied the petition reasoning that the trial court properly used the testimony and fashioned a fundamentally fair jury instruction. For the foregoing reasons, we affirm the district court's denial of the petition.
 
 I.
 
 2
 In 1974, the petitioner, Linzie Gardner, and a co-defendant, Michael Kidder, who were then both inmates at the State Prison of Southern Michigan, were charged with aggravated assault arising out of their repeated beating of a prison guard who surprised the two men at a time when they were involved in a sexual act in the prison's carpenter shop. At a joint jury trial both defendants were represented by the same attorney. During the trial, Kidder admitted to initially striking the prison guard lightly over the head. However, Gardner admitted to rendering the guard unconscious by striking him over the head at least four times with a wooden board and then striking the guard over the head again with a crowbar when he unexpectedly regained consciousness. While both men admitted their participation in the assault, they contended that neither intended to murder the guard. Gardner was convicted of assault with intent to commit murder and was sentenced to a term of fifty to seventy-five years imprisonment to be served consecutively to the sentence he already was serving. Kidder was convicted of assault with intent to do great bodily harm less than murder and was sentenced to a term of five to ten years imprisonment to run concurrently with the term he already was serving. The Michigan Court of Appeals affirmed the defendants' convictions. However, the Michigan Supreme Court reversed Gardner's conviction and remanded for a new trial reasoning that, while the defenses of Gardner and Kidder necessarily were not inconsistent, it should have been apparent to defense counsel at the outset of the case that the defendants' testimony would portray differing degrees of culpability, most notably less culpability on Kidder's behalf and greater culpability on Gardner's behalf. The supreme court noted that defense counsel during closing argument emphasized Kidder's limited role in the assault while highlighting Gardner's role. The supreme court concluded that since a single attorney felt it necessary to draw a distinction between his two clients' relative culpability, joint representation deprived Gardner of the effective assistance of counsel.
 
 
 3
 Subsequently, Gardner was retried by himself. Gardner never testified during the course of the second trial. However, over the defense counsel's objection, the trial court permitted Gardner's prior trial testimony as to his involvement in the assault to be read to the jury. The trial court reasoned that there was no evidence that Gardner testified at the first trial under duress or untruthfully or that he should have been advised to withhold his testimony. Gardner again was convicted of assault with intent to commit murder and was sentenced to a term of fifty to seventy-five years imprisonment. The Michigan Court of Appeals affirmed the conviction and the Michigan Supreme Court denied leave to appeal.
 
 
 4
 Gardner filed a petition for a writ of habeas corpus with the district court which referred the case to a magistrate for a determination of whether Gardner's testimony in the first trial was prompted by his defense counsel's conflicting representation of co-defendant. Adopting the magistrate's report and recommendation, which concluded that Gardner failed to establish any violation of his constitutional rights to the effective assistance of counsel or to fundamentally fair jury instructions, the district court denied Gardner's petition.
 
 II.
 
 5
 Gardner asserts that the trial court improperly used his prior trial testimony in his retrial. As a general rule, a defendant who chooses to testify waives his privilege against compulsory self-incrimination with respect to the testimony he gives and a defendant's testimony at former trial may be admissible against him in later related proceedings. See Harrison v. United States, 392 U.S. 219 (1968). However, where the defendant's testimony at the first trial was improperly induced as a result of a defect of reversible proportion, that testimony may be inadmissible at a subsequent trial. Accordingly, it is not a question of whether the defendant testified but, rather, what prompted him to testify. In the instant case, the question is whether Gardner's decision to testify at his first trial as to the extent of his involvement in the assault was the result of his attorney's divided loyalties. Gardner and his trial counsel, William Goler, testified at a evidentiary hearing held to determine whether Gardner's testimony at the first trial was, in fact, prompted by his trial counsel's conflicting representation of a co-defendant. Gardner testified that his trial counsel suggested he take the stand, outline everything that happened, relate how he checked the prison guard's pulse before leaving the area to make sure that he was not dead, and then explain that he obviously did not intend to kill the prison guard as he could have done so if he desired. Gardner acknowledged that his testimony at the first trial was truthful but that if he had been tried alone initially he would not have taken the stand. William Goler testified that:
 
 
 6
 As I recall, I discussed with Mr. Gardner the possibility of his being convicted of the offense with which he was charged if he did not take the stand. I left it to him as to whether or not he, in fact, wanted to do so, as I do in all my cases. But, I did suggest to him that perhaps it would be better if he did testify.
 
 
 7
 (Evidentiary hearing transcript at 21). When asked whether, in his professional judgment, there was any other reasonable theory of defense other than attacking intent, Goler testified:
 
 
 8
 No. That was the primary thing. In other words, to put it as bluntly as I can and as honestly as I can, it was my feeling that the jury could have believed that had Mr. Gardner wanted to kill the guard, he certainly could have done so because of the instrument that was used.
 
 
 9
 (Evidentiary hearing transcript at 23). Goler further stated that even if he had been representing only Gardner, he still would have recommended that he testify to explain that he did not intend to kill the prison guard. On the basis of the testimony of both Gardner and his trial counsel, the magistrate concluded that Gardner's decision to testify at the first trial was motivated by a desire to present the viable defense that he lacked the specific intent to murder the prison guard. The magistrate further concluded that Gardner's decision to testify was not affected by his trial counsel's representation of a co-defendant. We agree with the magistrate's conclusions. We find that Gardner's testimony was given for reasons wholly distinguishable from the improper dual representation of counsel. Accordingly, the trial court properly used Gardner's prior trial testimony at his retrial.
 
 III.
 
 10
 Gardner also asserts that upon retrial the trial court improperly instructed the jury on the intent necessary to convict one of assault with intent to murder. Gardner specifically avers that the trial court negated the requisite element of specific intent by instructing the jury that malice could mean the conscious creation of a very high risk of death. In instructing the jury on the specific intent required, the trial court defined the element of malice as follows:
 
 
 11
 Now, in this case the information filed by the Prosecution has charged the crime of assault with intent to murder. Any person who shall assault another with the intent to commit the crime of murder is guilty of this offense.
 
 
 12
 The Defendant has pleaded not guilty to this charge, so to establish the charge, the Prosecution must prove each of the following elements beyond a reasonable doubt. First, that the Defendant assaulted [the prison guard].
 
 
 13
 Now, an assault is an intent or threat with force and violence to do immediately bodily harm to another by one who has a present means of doing such harm. And second, at the time of committing such assault, the Defendant intended to murder [the prison guard].
 
 
 14
 Now, murder is a killing of one person by another with malice. Malice is a term with special meaning in the law. Malice means that the Defendant intended to kill or that he consciously create a very high risk of death with knowledge of the probable consequences of his act and that he did so under circumstances which did not justify, excuse or mitigate the crime.
 
 
 15
 (Emphasis added). We initially note that defense counsel at no time objected to the trial court's jury instruction. The failure to abide by a state's contemporaneous objection rule bars habeas review of the issue absent a showing of cause for the failure to object and actual prejudice arising from the error. See Wainwright v. Sykes, 433 U.S. 72, reh'g denied, 434 U.S. 800 (1977); McBee v. Grant, 763 F.2d 811 (1985); Fornash v. Marshall, 686 F.2d 1179 (6th Cir.1982), cert. denied, 460 U.S. 1042 (1983). Since defense counsel in the instant case failed to object timely to the instruction and has shown neither cause nor prejudice, we need not consider the petitioner's assertion of error. However, even if defense counsel had shown cause for his failure to object timely, we find that the trial court's instruction accurately stated the elements of the offense under Michigan law. In Williams v. Abshire, 544 F.Supp. 315 (E.D.Mich.1982), aff'd without opinion, 709 F.2d 1512 (6th Cir.1983), the petitioner, who had also been convicted of assault with intent to commit murder, challenged an identical jury instruction. The Williams court held that a trial court's instruction that malice meant either an intent to kill or conscious creation of a very high risk of death with the knowledge of probable consequences of his actions did not negate the requisite specific intent element. In the instant case, the Michigan Court of Appeals held that the trial court's jury instruction was consistent with state law. See, e.g., People v. Kramer, 108 Mich.App. 240, 310 N.W.2d 347 (1981). The state courts are the ultimate expositors of state laws, Mullaney v. Wilbur, 421 U.S. 684 (1975), and a federal court will not review a state court's decision on purely state law. Long v. Smith, 663 F.2d 18 (6th Cir.1981), cert. denied, 455 U.S. 1024 (1982).
 
 
 16
 For the foregoing reasons, we AFFIRM the district court's denial of the petitioner's petition for a writ of habeas corpus.
 
 
 17
 NATHANIEL R. JONES, Circuit Judge, concurring.
 
 
 18
 Although I concur in the conclusion reached by the majority, I write separately to express my understanding that Harrison v. United States, 392 U.S. 219 (1968), prevents the admission of testimony from previous proceedings if such testimony was improperly induced. This tainted testimony is inadmissible whether or not the result is a defect of reversible proportion. Id. at 222.
 
 
 
 *
 Honorable Carl B. Rubin, Chief Judge, United States District Court, Southern District of Ohio, sitting by designation